Appeal by plaintiff from a summary judgment for defendant. We affirm.
The basic legal question presented is whether or not a private corporation owes a duty to protect its invitees from a criminal attack.
Plaintiff, Diane Henley, parked her automobile in a parking deck owned and operated by Pizitz Realty Company (Pizitz) as a business enterprise. Upon entering the deck, she was presented with a ticket which recited:
 "This Contract Limits Our Liability. Please Read It. This Parking Deck rents space only. No bailment is created; and the Parking Deck is not responsible for loss or damage to car or contents due to fire, theft, vandalism, collision, or any other cause whatsoever. Please hold your children's hands. Do not leave children or pets in parked cars."
On the day of the episode giving rise to this action, the plaintiff returned to the parking deck after work, at approximately 5:40 p.m. She rode an elevator to a point near the parking level, then walked down a lighted way to her car. At that point, she was accosted at gunpoint by a man who forced her into her car. He required her to drive to the exit and pay the attendant, and then he forced her to drive to an apartment, where she was raped. She reported the incident to the police, whose investigation led to the arrest and conviction of the assailant.
At the time in question, the parking deck was equipped with a number of closed circuit television cameras monitored in the attendant's booth. A guard was also employed who made regular patrols of the deck.
Through interrogatories later propounded by plaintiff to defendant, it was disclosed that during the ten-year period between January 1, 1970, and December 31, 1979 (which is beyond the date of this incident, i.e., December 6, 1979), the following crimes, of which defendant had notice, occurred in this parking deck: one battery upon an owner of a car; six breakings and enterings of cars; two robberies; one rape (this occurrence); six thefts; and one theft in which the thief was shot by a customer.
Plaintiff brought this action against Pizitz, alleging negligence and wantonness in maintaining its security system in the parking *Page 274 
deck, and for breach of an agreement between Pizitz and plaintiff to provide and maintain a security system, resulting in plaintiff's abduction, battery, and rape. Pizitz moved for summary judgment, supported by the pleadings, defendant's answers to plaintiff's interrogatories, and the depositions of plaintiff, Peggy Ervin, Daniel Brown, and O.O. Young. Following a hearing, this motion was granted. Plaintiff appealed.
In support of her argument that the trial court erred in granting summary judgment for defendant, plaintiff espouses two positions. In one, plaintiff argues that a business proprietor has a legal duty to protect patrons from criminal acts when the proprietor knows or, in the exercise of reasonable care, should know that criminal acts are likely to occur. Under this principle, plaintiff maintains, the facts adduced show that Pizitz should have known of the likelihood of criminal activity and thus had a duty to protect plaintiff. In that connection, plaintiff urges that this Court adopt § 344 of the Restatement (Second) of Torts (1965):
 "Business Premises Open to Public: Acts of Third Persons or Animals.
 "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
 "(a) discover that such acts are being done or are likely to be done, or
 "(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
". . . .
 "(f) Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."
In the other position, plaintiff maintains that the language of the parking ticket, together with the presence of the television cameras, constituted a contractual duty, voluntarily assumed by Pizitz, to provide security against criminal attack by third persons.
This Court considered this same problem in Latham v. AronovRealty Company, 435 So.2d 209 (Ala. 1983). That decision explored the pertinent Alabama cases as well as decisions from other jurisdictions. See, e.g., Vines v. Plantation MotorLodge, 336 So.2d 1338, 1339 (Ala. 1976) (owner of vehicle who left keys in ignition not liable for injury caused by operation of vehicle by thief); City of Mobile v. Largay, 346 So.2d 393
(Ala. 1977) (perpetration of rape not reasonably forseeable consequence of City's failure to maintain its building). See also Berdeaux v. City National Bank of Birmingham,424 So.2d 594 (Ala. 1982) (financial institution providing office for paying and receiving money owed no special duty to protect customers from third persons committing robbery); and Annot., 10 A.L.R.3d 619. Perusal of our cases, and those of many other jurisdictions concerned with the problem, discloses an emphasis upon the absence of proximate cause, a conception not without difficulty in its application even on a case-by-case basis. See, Jones, J., dissenting in Largay, supra.
In Parham v. Taylor, 402 So.2d 884 (Ala. 1981), a clerk in a food and beverage store was shot by a robber. The clerk brought *Page 275 
an action for damages against her employer, claiming that he had failed to provide a safe place to work "in that she was not adequately protected from the criminal acts of third persons." In affirming summary judgment for the employer, this Court aligned itself with the reasoning expressed in a similar Kentucky decision, Thoni Oil Magic Benzol Gas Stations, Inc.,v. Johnson, 488 S.W.2d 355, 357 (Ky. 1972):
 "In the ordinary situation we indulge the assumption that people will obey the law rather than violate it. Thus, absent unusual circumstances, an employer need not anticipate injury to an employee through the criminal acts of third persons. In the ordinary situation an employer has no duty to provide police protection for employees. . . .
 "In spite of police protection afforded by the state it is a fact of life that citizens are sometimes assaulted, beaten, robbed, raped or murdered at home, at work or on the streets. This is a problem which confronts all citizens equally and for which there is often no civil remedy.
 "With our opinion in Johnson v. Thoni Oil Magic Benzol Gas Stations, Inc., [467 S.W.2d 772
(Ky. 1971)], we have joined the ranks of those jurisdictions which hold that in certain unusual circumstances an employer may have a civil liability to his employees for the criminal acts of third persons. We feel however that employers should not be saddled with such liability except in the most extraordinary and highly unusual circumstances.
 "When conditions of employment are such that they invite attack upon employees by creating highly unusual and unreasonable exposure to danger without the employment of reasonable protective measures there is justification for imposing liability upon the employer when injury results.
 "There is perhaps some exposure to the criminal acts of third persons in any employment but we recognize that the degree of exposure varies considerably from one type of employment to another. Thus the bookkeeper, the industrial worker, or the clerk in a mercantile establishment is probably less likely to be murdered on the job than is the policeman, the night watchman, the teller in a branch bank or the attendant at an all-night service station.
 "But even so, the employer of the night watchman, the bank teller, or the service station attendant is not the insurer of his safety from attack. Even in those occupations which ordinarily entail a substantial risk of exposure to criminal acts of third persons, we think liability should not attach to the employer unless it is clearly shown that the employer in some manner greatly and unreasonably increased that risk without taking reasonable precautions for the safety of the employee.
 "The determination of when the exposure to harm has been escalated to the point that liability will attach is difficult and each case must rest upon its own facts. We stress however that evidence of some potential danger or possibility of harm is not enough. It is only when the risk reaches the stage that injury to the employee is the likely or probable result of the condition of employment that liability attaches." (Citations omitted.)
It can readily be seen that the Kentucky court, and this Court, would not authorize recovery from an employer by an employee so injured, absent "the most extreme case where it is clearly shown that the employer in some manner, greatly and unreasonably, increased the risk to the employee without taking reasonable safety precautions." This position was in accord with the rationale of Thoni that "as a matter of law the conditions of the employment were not so fraught with danger as to render a crime against the employee a likelihood or a probability." Thoni at 357.
Although the employer-employee decisions are factually distinguishable, and their controlling legal principles do not contain precisely the same phraseology, nevertheless they are substantially similar to the *Page 276 
invitee cases, so as to furnish helpful doctrinal analogies.
Latham v. Aronov Realty Company, supra, dealt not with an employer-employee situation but a landlord-invitee relationship. In that decision, there is an exhaustive analysis of the premise upon which liability has been imposed upon a landlord whose invitee has been victimized by the criminal act of a third party. This Court held that an invitee of shopping mall owners, who was the victim of a criminal assault in the mall parking lot, could not recover damages in the absence of evidence showing that the owners knew or had reason to know from past experience that there was a likelihood of conduct by third persons that would endanger him. That opinion refers to cases showing the frequency of criminal incidents which put the defendant on notice and thus created the duty to protect: 77 car thefts and 15 attempted car thefts in one parking lot,Morgan v. Bucks Associates, 428 F. Supp. 546 (E.D.Pa. 1977); 273 police calls and 160 arrests at a bowling alley in a six-month period, Taylor v. Centennial Bowl, Inc., 65 Cal.2d 114,52 Cal.Rptr. 561, 416 P.2d 793 (1966); and 7 muggings within a year's time, with 5 of these committed in evening hours during the four months preceding the attack on plaintiff, Butler v.Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982).
It is also significant that in Latham, supra, plaintiff argued that the hiring of security personnel proved that the defendant landlord foresaw the possibility of criminal conduct by third parties, and that the presence of crowds on the night of the incident established the inference that the guard's attention should have been focused upon that area of the mall and of the parking lot nearby (where the attack took place). Likewise, plaintiff here argues that the presence of the monitoring system was a recognition of the likelihood of criminal activity and the assumption of a duty to protect the plaintiff from attack. Additionally, plaintiff contends that the defendant's security system could not be operated efficiently, because at peak periods the task of monitoring could not be accomplished properly by those whose duties included taking up money from customers.
In regard to a similar argument made by the plaintiff inLatham, this Court discussed a Tennessee decision, Cornpropstv. Sloan, 528 S.W.2d 188 (Tenn. 1975):
 "The facts in that case are strikingly similar to those in this case. In Cornpropst, an assailant attacked a woman shopper in the parking lot of a shopping mall. The attack occurred at night and there were no security guards posted in the lot. Prior to this attack, there has been various other assaults and acts of violence either on the premises or in the general vicinity. She sued the mall owner and the owners of the stores in the mall for a failure to provide adequate protection from the criminal acts of third parties.
 "The Tennessee court noted that under the common law there was no duty whatsoever to protect others from criminal acts of third parties. The court noted that in establishing such a duty, it would be very hard to determine when the duty arose, what measures would discharge the duty, and whether acts of the defendants would be the proximate cause of the injury. The Court opined:
 "`In our opinion it is a mistake to equate the duty of shopkeepers with respect to criminal acts with the duty of shopkeepers with respect to careless acts. Section 344 of the Restatement of Torts (Second) places both acts in exactly the same category in comment f.
"`. . . .
 "`In our opinion the appropriate rule applicable to this case is as follows: There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless *Page 277 they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee;
whereupon a duty of reasonable care to protect against such act arises.
 "`Assuming arguendo, that the complaint in this case states a cause of action upon which relief could be granted, we would dismiss the lawsuit for another reason. The facts alleged . . . establish an efficient, intervening and unforeseeable cause for the injury sustained by Marie Cornpropst [the plaintiff]. The minds of reasonable men cannot differ but that the sudden act [of the third party], which could not have been prevented or deterred by the exercise of reasonable care on the part of the shopping center merchants, was the sole proximate legal cause of harm to Marie Cornpropst. Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217
(1965).'" Latham, 435 So.2d at 213.
In Cornpropst and in Latham, the legal question was whether or not the particular criminal conduct was foreseeable. It was held in each case that the criminal conduct was not foreseeable because the evidence failed to establish that the defendant knew or had reason to know that "acts [were] occurring or about to occur on the premises that pose[d] imminent probability ofharm to an invitee," and, thus, no duty to protect against such act arose. Accord Stripling v. Armbrester, 451 So.2d 789 (Ala. 1984).
Without detracting from our natural sympathy for this unfortunate victim, we conclude that the occurrences of the ten-year period established by plaintiff did not give rise to a duty upon this defendant to protect this plaintiff from the crime for which she suffered at the hands of the third-party criminal. Paraphrasing from Latham, supra, at 214, there was an absence of evidence that the defendant either knew or should have known of a likelihood of conduct on the part of a third person such as this assailant which would endanger the invitee. Thus, under the facts of this case, this assault and the rape were not reasonably foreseeable.
This Court cannot agree, moreover, with plaintiff's argument that the parking ticket received by plaintiff established a contract with her to provide her with security against criminal attack, and, together with the closed circuit monitors, constituted a voluntary undertaking by Pizitz to protect the plaintiff from attacks upon her person. Such an interpretation would extend far beyond any intention manifested by the language contained thereon. By its terms, the ticket contracted for rental space. Any foreseeable incident recognized by those terms, at most, would have concerned theft of articles left within an automobile, and, perhaps, damage by vandalism. We cannot construe the language of the parking ticket as an assumption by Pizitz of all liability not specifically excluded.
For these reasons, this Court has concluded that the trial court did not err in granting the summary judgment for defendant.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.