Savana Brock, as administratrix of the estate of Beverly Ann Jackson, appeals from the summary judgments for defendants Watts Realty Company, Inc., and James C. Levie on her suit against them alleging negligence. The basis of Brock's complaint was that Levie and Watts Realty, as owner and lessor, respectively, of an apartment rented to Jackson, failed to maintain the locks on Jackson's back door in a safe condition as required by two Birmingham Housing Code ordinances, which read:
"Sec. 7-1-93 Windows, exterior doors, etc.
 "Every window, exterior door and basement hatchway shall be reasonably weathertight, watertight and rodentproof and shall be kept in sound working condition and good repair. Locks shall be provided on all exterior doors and all exterior openable windows."
(Emphasis added.)
 "Sec. 7-1-97 Construction, maintenance, etc., generally, of facilities, etc.
 "Every facility, piece of equipment or utility which is required under this article shall be so constructed or installed that it will function safely and effectively and shall be maintained in satisfactory working condition."
(Emphasis added.)
Beverly Jackson and Beverly Silliman had been romantically involved with the same man, Curtis Hawkins, and, as a result, had had confrontations and had exchanged threats. On October 16, 1985, about 9:00 a.m., Jackson called the Birmingham police and reported that a prowler was at the "back part" of her apartment. Sergeant Roger Harrison arrived at her apartment about 9:07 a.m.; he did not see anyone near the front door, which, he stated in his affidavit, was locked. Immediately after Sergeant Harrison knocked on the front door, Silliman exited through the rear door of the apartment. When the officers entered the apartment, they found Jackson lying on the floor, stabbed to death. Silliman pleaded guilty to murder and is currently serving her sentence.
Brock's argument on appeal is a novel one in that she advocates holding Levie and Watts Realty statutorily liable for the death of her daughter rather than holding them liable under the common law. She alleged in her complaint against them that the locks on Jackson's back door were faulty, that Jackson had submitted two service requests to Watts Realty asking it to repair the locks on her back door, that Watts Realty failed to repair the locks or to acknowledge Jackson's requests in any way, and that, as a result of the faulty locks, Jackson's killer entered her apartment through the back door.[1] *Page 440 
The general rule in Alabama is that landlords and businesses are not liable for the criminal acts of third persons unless such acts were reasonably foreseeable. Moye v. A.G. GastonMotels, Inc., 499 So.2d 1368 (Ala. 1986); Ortell v. SpencerCompanies, 477 So.2d 299 (Ala. 1985); and Henley v. PizitzRealty Co., 456 So.2d 272 (Ala. 1984). The basis for this rule has been that landlords and businesses should not be held liable for acts that could not have been anticipated.
Brock argues that statutes and ordinances such as the two Birmingham ordinances here are enacted only to protect a class of people from a foreseeable harm, i.e., crime; otherwise, she argues, such statutes and ordinances would be unnecessary. Looking at the statute pursuant to which the ordinances at issue here were enacted, Ala. Code 1975, § 11-53-1, we agree. That statute reads, in pertinent part:
"Legislative declarations and findings of fact.
 "It is hereby declared that insanitary and unsafe buildings, dwellings and structures of all types and descriptions used for human habitation exist in the incorporated municipalities of this state and that such insanitary and unsafe
conditions arise from obsolescence, poor repair, maintenance and the overcrowding and use of such buildings, dwellings and structures used for human habitation and occupancy; . . . and, that such conditions cause an increase in and spread of
disease and crime and are damaging and injurious to the inhabitants and general public of such incorporated municipalities."
(Emphasis added.) It is, thus, clear that the legislature attempted to alleviate the crime problem in such residential areas as Jackson's and in the landlord/tenant context by authorizing incorporated municipalities to enact and enforce housing codes for the protection of occupants of residential dwellings such as Jackson.
Although the issue before us is one of first impression, Florida recently held landlords to a statutory duty to protect their tenants from the criminal acts of third persons inPaterson v. Deeb, 472 So.2d 1210 (Fla.Dist.Ct. 1985), reviewdenied, 484 So.2d 8 (Fla. 1986). In that case, a female tenant was sexually assaulted by an unknown assailant in her apartment building, which had a front door with a faulty lock and a rear door with no lock. The plaintiff, as here, had previously notified the landlord of the inadequate security and had expressed concerns for her safety. A Florida statute in effect at the time the lease was signed, § 83.51, Florida Statutes (1981), required a landlord to provide leased premises "with locks and keys" in the leased areas and the common areas, and to maintain the common areas of the premises in a "safe condition."
Recognizing the general rule in Florida regarding the nonliability of landlords in such contexts, the court inPaterson v. Deeb nonetheless held that § 83.51 created a duty on the part of the landlord to provide protection from criminal attacks by third parties, regardless of an absence of prior similar incidents:
 "Since the purpose of the statutory duty to provide locks is the prevention of criminal acts by unauthorized persons having unrestrained access to the premises, we conclude that the landlord's duty to reasonably provide protection from criminal attack does not have to be implied from prior similar occurrences on the leased premises."
472 So.2d at 1217.
The Florida court went on to discuss at length the foreseeability issue in the causation context and stated:
 "In view of the obvious purpose of the statutory duty to provide locks and security to prevent potential [damage] caused by the acts of unwarranted trespassers on the leased premises, we expressly decline to require as the essential predicate to liability allegation and proof that the landlord had actual or constructive knowledge of prior similar criminal acts committed on the premises. We are *Page 441 
not willing to give the landlord one free ride, as it were, and sacrifice the first victim's right to safety upon the altar of foreseeability by slavishly adhering to the now-discredited notion that at least one criminal assault must have occurred on the premises before the landlord can be held liable. Isaacs v. Huntington Memorial Hospital, 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653 (1985)."
472 So.2d at 1218-19.
The Florida court then concluded by saying that "the issue of foreseeability in this case is not a question of law essential to the element of the landlord's duty, but is a question of fact for the jury on the element of causation."472 So.2d at 1220.
We agree with the Florida court's reasoning and hold that the two Birmingham Housing Code ordinances here, §§ 7-1-93 and 7-1-97, created a duty on the part of Levie and Watts Realty to maintain the locks on Jackson's doors "in satisfactory working condition" because the resulting crime (Jackson's murder) was one the general risk of which was foreseeable, regardless of whether there had been prior similar incidents in the area.
Both Levie and Watts Realty argue that, pursuant to a clause in Jackson's lease, she was responsible for repairing all locks once she took possession of the apartment and that they were required only to provide her with locks that were in good working order upon her taking possession. However, under the same section of the lease entitled "Rules and Regulations," there is also a provision that reads, "No additional locks shall be affixed to any door except by written consent byLessor. Nor shall any existing locks be changed withoutLessor's written consent." (Emphasis added.)
Brock stated in her affidavit the following concerning her daughter's service requests:
 "I am . . . personally aware of various complaints my daughter made to Watts Realty to have the locks repaired on her rear door. Beverly filled out the request card and was never told while I was present to fix the locks herself.
Beverly was told that the complaint would be passed on to the maintenance man, and we were told it would be taken care of."
There is no evidence in the record that Jackson was ever given permission, according to the terms of her lease, to repair the locks on her back door or that Watts Realty attempted to repair them for her. We disagree with the arguments of Levie and Watts Realty that the lease provisions making Jackson responsible for repairing her locks but requiring her to first get Watts Realty's permission shields them from liability. While it is true that there is no legislative impediment of which we are aware that prevents a lessor from including such provisions in a lease, a lessor may not make a tenant responsible for repairing locks, such as here, allowing repairs only after obtaining the lessor's permission, and at the same time withhold such permission after two explicit requests for repairs. To do so would violate the public policy stated in § 11-53-1, which was implicitly behind the adoption of the Birmingham Housing Code. We point out, however, that our holding is limited to the facts of this case.
Finally, Brock correctly argues that there is a genuine issue of material fact regarding causation, specifically, whether Silliman did, in fact, enter Jackson's apartment through the rear door. Sergeant Harrison stated that it was his opinion that Silliman entered and exited through the rear door of Jackson's apartment. On the other hand, Watts Realty and Levie presented the following evidence: Silliman testified that she entered Jackson's apartment through the front door. Furthermore, Jackson's next door neighbor, Wesley Douglas, and the Watts Realty maintenance man, Wade Brown, stated that, immediately after Jackson was killed, the locks on the back door were tested and were found to be in good working order.
Based upon our review of the record, we agree with Brock that the causation issue was one for the jury and that Levie and Watts Realty were not entitled to judgments as a matter of law. Therefore, the *Page 442 
judgments in their favor are reversed and the case is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS,* HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Jackson had also filled out a third service request regarding the lock on the front door; the condition of that lock, however, is not at issue.
* Justice Adams did not attend oral argument, but he has listened to the tape recording of the argument.