Maurice Dailey, as administrator of the estate of Barbara Jean White, deceased, and Pierre Maurice Williams, a minor, acting through his next friend Maurice Dailey, appeal from a summary judgment in favor of the Housing Authority for the Birmingham District ("HABD"), Benjamin Greene, the chairman of HABD's board of commissioners, and Edward Jagnandan, the executive director of HABD. Dailey, the brother of White, filed a complaint against HABD seeking damages for the death of White, an HABD tenant who was shot and killed during a gunfight between alleged drug dealers on or adjacent to HABD premises. The issues are whether HABD is entitled to claim substantive immunity from the claims brought by Dailey and Williams; whether Greene was entitled to immunity because he *Page 1344 
was a noncompensated volunteer; whether HABD, Jagnandan, or Greene owed a duty to White to protect her from the criminal acts of third parties; whether HABD breached a contract with White and if so, whether Williams, her son, was a third-party beneficiary to that contract; and whether Williams was entitled to damages for an alleged loss of consortium.
White was standing on the porch of her apartment on May 1, 1990, when she was struck in the forehead by a bullet. She died early the next morning. The shot that struck her was fired by Floyd Willie Pippins, who was later convicted of manslaughter. At the time of White's death, Pippins was engaged in a gunfight with Kenneth Johnson and Larry "Sleepy" Jones in a parking lot adjoining Metropolitan Gardens. The plaintiffs alleged that Pippins, Johnson, and Jones were drug dealers who frequented Metropolitan Gardens. Metropolitan Gardens is owned by HABD and consists of 920 apartments with approximately 2700 to 3000 tenants; it is spread over five city blocks. HABD is governed by a commission consisting of five commissioners appointed by the mayor of the City of Birmingham, pursuant to the authority of Ala. Code 1975, § 24-1-24; they serve without compensation. Greene was one of the five commissioners of HABD, and Jagnandan was the executive director of HABD at the time of White's death.
The first issue is whether HABD is entitled to substantive immunity from the claims brought against it. HABD argues that because it is a governmental entity, providing services that it contends are for the general public, it should be immune from civil liability for negligence.
Ala. Code 1975, § 24-1-1 et seq., provides for the creation of housing authorities. Section 24-1-27 provides the powers and duties of an authority generally:
 "(a) An authority shall constitute a public body and a body corporate and politic exercising public powers, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article, including the following powers in addition to others granted in this article:
 "(1) To investigate into living, dwelling and housing conditions and into the means and methods of improving such conditions;
 "(2) To determine where unsafe or unsanitary dwelling, public school or housing conditions exist;
". . . .
"(22) To sue and be sued;
". . . ."
(Emphasis added.)
The language in this Code section has been interpreted to mean that the legislature intended that housing authorities not be immune from civil suits. Housing Authority of BirminghamDistrict v. Morris, 244 Ala. 557, 14 So.2d 527 (1943); HousingAuthority of Prattville v. Headley, 360 So.2d 1025
(Ala.Civ.App. 1978).
In Morris, a tenant of Elyton Village, an apartment complex operated by HABD, filed a complaint against HABD, alleging both tort and contractual liability. HABD appealed from a judgment entered for the tenant. HABD argued that it was exempt from liability because of a provision in the lease stating that the landlord would not be liable for any damage to the tenant's person or property resulting from any cause. This Court held that HABD could not contract itself out of liability for its negligent acts. In doing so, the Court quoted the enabling act pursuant to which HABD was incorporated, Ala. Acts 1935, No. 56, pp. 126, 143, codified at Code of 1940, tit. 25, §§ 5 through 30 (now Ala. Code 1975, §§ 24-1-20 through -45). Section six of that act provided that a housing authority could "sue and be sued." This Court stated in Morris:
 "There is nothing in the act that expressly exempts the 'authority' from liability proximately resulting from its negligence or the negligence of its agents or servants, in conducting the business for which it was given life, or that authorizes it to provide by contract for such immunity. The express authority in the act of its creation subjecting it to be sued generally *Page 1345 indicates a legislative intent to the contrary."
244 Ala. at 562, 14 So.2d at 531-32.
Because the enabling act for housing authorities provides that they can sue and be sued, such entities are not immune from civil liability.[1]
On the issue of whether HABD owed White a duty to protect her from the criminal acts of third parties, we note that "It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." Moye v. A.G. Gaston Motels,Inc., 499 So.2d 1368, 1370 (Ala. 1986).
Dailey argues that HABD had a statutory duty to provide White with protection from the criminal acts of third parties, citing Ala. Code 1975, § 24-1-21. However, as the defendants point out, Dailey did not make this argument to the circuit court, either in his complaint, in his amended complaint, or in his response to the defendants' motion for summary judgment. This Court will not consider arguments that were not before the trial court.See Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala. 1992).
Dailey also argues that HABD had a contractual duty by the terms of the lease to provide police protection to White. Dailey offers support for this argument by pointing to the section of the lease entitled "THE LANDLORD'S OBLIGATIONS." That section provides:
 "The Landlord's obligations under this lease shall include the following:
 "(1) To maintain the premises and the project in decent, safe and sanitary condition;
 "(2) To comply with requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety;
". . . .
 "(4) To keep project buildings, facilities and common areas, not otherwise assigned to the Tenant in a clean and safe condition. . . ."
Dailey argues that the words "safe" and "safety" within the lease placed on HABD a duty to provide police protection for White. These terms alone did not impose on HABD a duty to provide police protection for White and all other tenants. HABD's contractual duty was only to keep the premises themselves — i.e., the buildings and grounds — in a safe condition. Such an ordinary duty did not entail the extraordinary duty of hiring security forces to patrol the area.
Dailey also argues that HABD voluntarily undertook the duty to protect White from the criminal acts of third parties. At the time of White's death, HABD had hired one security guard to patrol the Metropolitan Gardens premises during certain hours. Dailey argues that this act in itself is evidence that HABD voluntarily undertook the duty to provide White with police protection from the criminal acts of third parties. Dailey also points to various internal memoranda of HABD, including a document entitled "Background," attached to its Security PlanNarrative and Five Year Security Plan, that he argues indicate that HABD voluntarily undertook the duty to provide White with crime-free housing. In the "Background" statement, HABD states:
 "The HABD is fully aware as to the manner in which that environment has been modified through the years by the interaction of tenants among themselves and their surroundings, and by a variety of positive interventions sponsored by the HABD. It has always maintained its responsibility to provide decent, safe and sanitary housing in an environment conducive to a high quality of life for its tenant households. *Page 1346 
Maintaining this responsibility in the 1980's appears to require additional efforts in the provision of security to insure the safety of the tenants in their environment."
Dailey also points to an HABD document entitled "An Examination of the Role of HABD Security Officers," which contains a section entitled [HABD] Security Officers'Understanding Of Their Role. This section states:
 "Security personnel perceive their role primarily as insuring the safety of tenants and providing them with protection; they also recognize they provide 'peace of mind' to many, and alleviate fears and frustrations for others."[2]
Dailey argues that the hiring of a security guard to patrol Metropolitan Gardens, as well as the above excerpts from HABD's internal memoranda, create a genuine issue of material fact as to whether HABD had voluntarily assumed the duty to provide White with police protection. We find this argument to be flawed, however, because all that the quoted statements from the documents and HABD's hiring of a security guard indicate is an attempt by HABD to discourage crime in the Metropolitan Gardens area, not a voluntary assumption of a duty to provide White particularly with protection from all criminal acts. We find the actions of HABD to be commendable, both in hiring security personnel and in setting out in writing those persons' duties and roles. HABD was attempting to reduce the occurrences of crime in the Metropolitan Gardens neighborhood and to alleviate the fears and anxieties of its tenants. We hesitate to penalize HABD or any other landlord for providing private security by thereafter holding the landlord responsible for any criminal act occurring on the premises. We refuse to hold that HABD, by hiring a security guard and setting out that guard's duties and roles, voluntarily assumed the duty to provide a totally crime-free environment for White. Such a holding would discourage housing authorities and other landlords from hiring security guards or otherwise working to protect their tenants from criminal acts.
Dailey finally argues that HABD owed White a duty to protect her from the criminal act that caused her death, because, Dailey argues, it was reasonably foreseeable that such an act might occur.
In O.H. v. Ballard Realty Co., 516 So.2d 519, 520 (Ala. 1987), this Court stated that the law applicable to cases where a tenant is attacked or harmed by the criminal act of a third party is "contained mainly in cases that involve storeowners and their duty to customers to prevent third-party attacks." The Court continued:
 " 'This Court has recognized that a duty may be imposed on a storeowner to take reasonable precautions to protect invitees from criminal attack in the exceptional case where the storeowner possessed actual or constructive knowledge that criminal activity which could endanger an invitee was a probability. Henley v. Pizitz Realty Co., 456 So.2d 272, 277 (Ala. 1984). Nevertheless, we have found that "it is difficult to impose liability on one person for an intentional criminal act committed by a third person." CIE Service Corp. v. Smith, 460 So.2d 1244, 1247 (Ala. 1984). This Court has not yet decided a case whose facts command the imposition of such a duty. See, e.g., Henley, supra; Stripling v. Armbrester, 451 So.2d 789 (Ala. 1984); Latham v. Aronov Realty Co., 435 So.2d 209 (Ala. 1982); Berdeaux v. City National Bank of Birmingham, 424 So.2d 594 (Ala. 1982); Parham v. Taylor, 402 So.2d 884 (Ala. 1981); City of Mobile v. Largay, 346 So.2d 393 (Ala. 1977).' "
Id. 516 So.2d at 520, quoting Ortell v. Spencer Companies,477 So.2d 299 (Ala. 1985). See also Webster v. Church's FriedChicken, Inc., 575 So.2d 1108 (Ala. 1991); Bailey v. Bruno's,Inc., 561 So.2d 509 (Ala. 1990); Williams v. First Alabama Bank,545 So.2d 26 (Ala. 1989); Frazier v. Laborers Int'l Union ofNorth America, 502 So.2d 743 (Ala. 1987); Moye v. A.G. GastonMotels, Inc., *Page 1347 499 So.2d 1368 (Ala. 1986); Law v. Omelette Shop, Inc., 481 So.2d 370
(Ala. 1985).
In Brock v. Watts Realty Co., 582 So.2d 438 (Ala. 1991), andL.M.S. v. Angeles Corp., 621 So.2d 246 (Ala. 1993), this Court reversed summary judgments for landlords where the plaintiff alleged that the failure, after notice, to repair locks on the door (Brock) or on a window (L.M.S.) caused criminal attacks by persons entering the apartment. Those cases are distinguishable because each case involved a specific defective condition in the apartment rented to the plaintiff.
Dailey argues that a prior shooting of another Metropolitan Gardens tenant, tenant reports concerning ongoing drug activity on Metropolitan Gardens premises, and HABD's internal documents establish that HABD did know of the probability of such a criminal act as the one that caused White's death.
The fact that one prior shooting had occurred on the premises, that Metropolitan Gardens residents had reported to HABD personnel that drug sales were occurring on Metropolitan Gardens premises, and that HABD documents referred to a problem with crime in HABD's projects does not meet Dailey's burden under the above-cited cases of showing that HABD had a duty to protect White from the criminal acts of third parties. The act that caused White's death was not even directed at her. Dailey provided no evidence that HABD had any indication that anyone intended a criminal attack on White. It is difficult, considering these circumstances, to conceive of a way that HABD could have protected White from the act that caused her death. The judgment is due to be affirmed as to HABD.
Similarly, the judgment is due to be affirmed as to Jagnandan and Greene. We pretermit consideration of Greene's argument that he was immune from suit as a noncompensated volunteer, under the Volunteer Service Act, Ala. Code 1975, § 6-5-336(c)(1) and (4), and pursuant to § 10-11-3. Because we affirm the summary judgment as to the claims based on the death of Ms. White, we also pretermit any discussion of the issues raised by Williams.
The defendants properly supported their summary judgment motion; it was not rebutted by substantial evidence creating a genuine issue of material fact. Rule 56(c), Ala.R.Civ.P.; §12-21-12, Ala. Code 1975. The summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
[1] The parties have argued whether HABD's proffered defense of immunity should even be considered on appeal. Dailey argues that HABD waived the defense by failing to plead it in its answer, as it is required to do under Rule 8(c), Ala.R.Civ.P. HABD responds by contending that Dailey has waived this argument because Dailey did not object to HABD's raising the defense for the first time in HABD's memorandum in support of its summary judgment motion. HABD argues that arguments based on defects in pleadings can not be raised for the first time on appeal. We agree that Dailey did not preserve any issue as to the alleged waiver of the defense of immunity.
[2] Dailey also points to a subsection of this document entitled "Why do Security Personnel Take it Upon Themselves to Carry Firearms?" We find the text accompanying this subtitle to be irrelevant, because the security guard who patrolled Metropolitan Gardens was unarmed.