As indicated by the main opinion, this is a very complex case involving issues of class certification and arbitrability of claims.
I respectfully dissent from Part I(A) of the main opinion, relating to the claims against Med Center Cars, Inc., d/b/a Med Center Mazda, in which the Court holds that the arbitration clause in the "Buyer's Order" is unenforceable because Med Center Mazda, *Page 22 
acting through its representative, did not sign the "Buyer's Order."
This Court has held:
 "The existence vel non of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent. Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance."
Deeco, Inc. v. 3-M Co., 435 So.2d 1260, 1262 (Ala. 1983). In the Med Center Cars case, the Buyer's Order did not specifically state that it would not be effective unless it was signed by a Med Center Mazda representative. Rather, as the main opinion points out, it states that it is "Not valid unless accepted by seller or its authorized representative." (Emphasis added.) Med Center Mazda accepted by selling and delivering the car in accordance with the terms of the Buyer's Order. Because I believe that this was a valid acceptance under the principle of Alabama contract law stated above, I would hold that the terms of the Buyer's Order, including the arbitration clause, are binding. Therefore, I respectfully dissent as to Part I(A).
I concur in the result reached by the majority in Part I(B), that the plaintiff Louis Clements must arbitrate his claims against Crown Pontiac, Inc.
I dissent as to Part I(C), in which the Court holds that the arbitration agreement in the Buyer's Order signed by Vivian Smith and Serra Mitsubishi, Inc., could not be enforced by Serra Automotive, Inc. In the circuit court, Serra Automotive argued that it was entitled to an order compelling arbitration because Smith had signed a Buyer's Order that contained an arbitration clause. On appeal, and for the first time, Smith argues that Serra Mitsubishi, Inc., and Serra Automotive, Inc., are separate legal entities.
The record does not show that Smith raised in the trial court the question whether Serra Mitsubishi, Inc., and Serra Automotive, Inc., are separate legal entities. This Court has consistently refused to consider arguments that were not presented to the trial court. See Abbott v. Hurst, 643 So.2d 589
(Ala. 1994), and Dailey v. Housing Authority for the BirminghamDist., 639 So.2d 1343 (Ala. 1994). Therefore, because this issue was not properly preserved for review, I respectfully dissent from the main opinion's holding.
Second, even if the issue was properly preserved, my review of the record and the briefs convinces me that Serra Automotive, Inc., used the fictitious trade name Serra Mitsubishi, Inc., for purposes of doing business. The Legislature implicitly recognized the use of fictitious trade names when it specifically excluded fictitious names from the corporate-name requirements set out in § 10-2B-4.01, Ala. Code 1975. No law dictates that a corporation indicate to any state agency that it uses a trade name or that it signify the use of a trade name in the name itself. Further, some states have specifically held that a corporation "may enforce, as well as be bound by, contracts entered into in an adopted name other than the regular name under which it was incorporated." 18A Am. Jur.2d Corporations § 284 (1985) (citations omitted). Therefore, because Smith presented no evidence to indicate that Serra Mitsubishi, Inc., and Serra Automotive, Inc., are incorporated as separate entities, and because Smith presented no evidence that Serra Mitsubishi, Inc., is something other than a fictitious trade name of Serra Automotive Inc., I respectfully dissent.
I concur in the result reached by the Court in Part II. By concurring in the result, however, I should not be understood as agreeing to be bound by the trial judge's future decision on this issue, especially in view of the fact that the main opinion suggests that this Court refuses to follow the federal rule that a signatory can be bound to arbitrate with a nonsignatory at the nonsignatory's insistence when there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract." Thomson-CSF, S.A. v. American Arbitration Ass'n,64 F.3d 773, 779 (2d Cir. 1995) (quoting an earlier case). In short, the claims here could be "intimately founded in and intertwined with the underlying contract obligations."Thomson-CSF, S.A., 64 F.3d at 779 (quoting earlier cases). My views on *Page 23 
when and under what circumstances the doctrine of equitable estoppel should be applied are stated in my special writings inEx parte Dickinson, 711 So.2d 984 (Ala. 1998) (Maddox, J., concurring in part and dissenting in part); Ex parte Stripling,694 So.2d 1281 (Ala. 1997) (Maddox, J., concurring in part and dissenting in part); and Ex parte Jones, 686 So.2d 1166 (Ala. 1996) (Maddox, J., dissenting).
As to Part III of the main opinion, I concur in the result, based on the persuasiveness of the federal law prohibiting class-wide arbitration except in cases where the contract authorizes it. See Champ v. Siegel Trading Co., 55 F.3d 269 (7th Cir. 1995); see also Government of the United Kingdom v. BoeingCo., 998 F.2d 68 (2d Cir. 1993); American Centennial Ins. Co. v.National Cas. Co., 951 F.2d 107 (6th Cir. 1991); Baesler v.Continental Grain Co., 900 F.2d 1193 (8th Cir. 1990); andProtective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.,873 F.2d 281 (11th Cir. 1989). Additionally, it appears to me that, in view of the fact that class actions require commonality, and because some of these present cases involve contracts with arbitration clauses and others do not, there can hardly be a state of facts that would authorize the trial judge to recognize the commonality required for a class action.
HOOPER, C.J., and SEE, J., concurs.