743 So.2d 456 (1998)
James CARTER and Suzanne Carter
v.
CHRYSLER CORPORATION and Chrysler Credit Corporation.
2970833.
Court of Civil Appeals of Alabama.
November 6, 1998.
Rehearing Denied January 29, 1999.
Certiorari Denied July 9, 1999.
*458 M. Clay Ragsdale, Birmingham, for appellants.
James F. Walsh and William L. Waudby of Lange, Simpson, Robinson & Somerville, Birmingham, for appellees.
Alabama Supreme Court 1980781.
ROBERTSON, Presiding Judge.
On May 24, 1994, James Carter and Suzanne Carter sued Chrysler Corporation, Chrysler Credit Corporation, and various other defendants on claims of fraud, negligence, wantonness, and breach of warranty arising out of their purchase of a vehicle on April 2, 1993. After litigation and discovery, the trial court entered a summary judgment for Chrysler Corporation and Chrysler Credit Corporation[1] ("Chrysler") on September 19, 1997, by a notation on the case action summary sheet. At the time of its entry, the summary judgment was not a final appealable judgment because of the pendency of the Carters' claims against other defendants. After those claims were disposed of, the Carters filed a motion to alter, amend, or vacate the summary judgment; the trial court denied that motion on March 3, 1998.
The Carters appealed to the Supreme Court of Alabama. That court transferred the appeal to this court, pursuant to § 12-2-7, Ala.Code 1975.
On appeal, the Carters argue that the trial court erred by entering a summary judgment on their claim of fraud by suppression because, they say, a genuine issue of material fact exists concerning whether Chrysler had a duty to disclose that the vehicle they were purchasing had been repurchased by Chrysler under Alabama's "Lemon Law," §§ 8-20A-1 through 8-20A-6, Ala.Code 1975. The Carters also argue that the trial court erred in entering the summary judgment on their claims of negligence and wantonness.
In reviewing the disposition of a motion for a summary judgment, we utilize the same standard as the trial court used in determining "whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise *459 of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
Viewed in a light most favorable to the Carters, the evidence suggests the following. The Carters purchased a 1991 Dodge Dakota truck in April 1993 from a Chrysler dealership in Birmingham. After the purchase, the Carters became aware of numerous mechanical problems with the truck. Attempts to repair these problems were unsatisfactory. They later discovered that the truck had been repurchased by Chrysler under § 8-20A-2, Ala.Code 1975. That statute is part of Alabama's "Lemon Law" providing for various consumer rights when a vehicle cannot be made to conform to the manufacturer's warranties; it provides that a vehicle that cannot be made to conform to its warranty may be repurchased by the manufacturer.
Section 8-20A-4 of the Lemon Law provides that the vehicle may not be resold in Alabama unless the manufacturer "brands the title." Branding the title means that all certificates of title to the vehicle subsequently issued by the Alabama Department of Revenue contain the notation "THIS VEHICLE WAS RETURNED TO THE MANUFACTURER BECAUSE IT DID NOT CONFORM TO ITS WARRANTY." Although Chrysler had branded titles with respect to other vehicles repurchased under the Lemon Law, it did not brand the title of the truck that the Carters purchased because the procedures involved in branding the title through the Alabama Department of Revenue took approximately 90 days. Representatives of Chrysler testified that the value of vehicles generally decreased about $10 per day and that Chrysler did not want to incur the additional cost caused by the delay in branding the title. The evidence also indicates that after consulting the Alabama attorney general's office, Chrysler adopted a policy whereby it resold vehicles that it had repurchased under Alabama's Lemon Law in states that did not have lemon laws, so that it would not have to brand the titles.
The truck in question was sold and purchased by a series of owners and dealerships until it was eventually acquired by the Carters. After Chrysler repurchased the truck under the Alabama Lemon Law and repaired it, the truck was resold at an automobile auction in Moody, Alabama, to a Chrysler dealership. The dealership was provided with a written disclosure showing the nature of Chrysler's repurchase. The dealership sold the truck to an individual, again disclosing the nature of Chrysler's repurchase. That individual sold the truck to another individual, again with a disclosure about Chrysler's repurchase. However, the new purchaser then sold the truck to an automobile wholesaler with the notation "as is" and without any notice as to Chrysler's repurchase. The wholesaler sold the truck to the dealership that sold it to the Carters.
The record also indicates that Chrysler initially maintained computer records that allowed it to track vehicles that were repurchased under state lemon laws. These records were available to Chrysler dealerships that purchased Chrysler vehicles, and such records were available to the dealership that sold the truck to the Carters. However, Chrysler indicated that it had begun a policy of deleting the records showing lemon law repurchases by the time the Carters purchased their truck.

I. Fraudulent Suppression
The Carters first argue that the trial court erred in entering the summary judgment for Chrysler on their claim of fraud by suppression. A claim of fraudulent suppression is governed by Ala.Code 1975, § 6-5-102, which states:

*460 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
The elements of a claim of fraudulent suppression are generally stated as (1) a duty to disclose the facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury. Wilson v. Brown, 496 So.2d 756, 759 (Ala.1986).
At the outset, we note that in their briefs to this court the parties address only the element of the duty to disclose. Based on a careful review of the evidence, we conclude that the record contains substantial evidence creating a genuine issue of material fact with respect to the other elements of suppression. Accordingly, we consider whether Chrysler had a duty to disclose the nature of its repurchase, to determine whether the trial court correctly entered the summary judgment for Chrysler on the Carters' claim of fraudulent suppression.
In State Farm, Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998), our Supreme Court, overruling earlier cases, held that the determination whether one had had a duty to disclose is a question of law for the trial judge. Previously, the rule had been that whether one had had a duty to disclose was a question for the jury to decide, under the facts and circumstances of each particular case. Oxford Furn. Co. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118 (11th Cir.1993); Baker v. Bennett, 603 So.2d 928 (Ala.1992). As a consequence of this new legal rule, the Court in Owen overruled cases such as Bennett, supra, to the extent that those cases held that the determination of duty was a question of fact for the jury.
In framing the test to be applied to this new responsibility for the trial judge, however, the Court in Owen noted:
"Of course, the concept of duty does not exist in a vacuum. It requires a relationship between two or more parties, a relationship that can be shown only through a history of contacts, conversations, and circumstances. Determining whether there is a duty necessarily requires analyzing the factual background of the case. In that sense, whether a duty exists is a mixed question of law and fact."
Owen, supra, 729 So.2d at 839. After asserting that the requirement that the judge analyze facts did not make the question of duty a question of fact, the Court concluded that the trial judge must determine if "there is substantial evidence which if accepted by the jury would give rise to a duty to disclose as a matter of law." 729 So.2d at 841.
Referencing the factors first set out in Berkel & Co. Contractors, Inc. v. Providence Hospital, 454 So.2d 496 (Ala.1984), the Court in Owen also addressed the factors to be considered in determining whether one had had a legal duty to disclose:
"(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."
729 So.2d at 842-43.
Chrysler's argument that it had no duty to disclose the circumstances of its repurchase of the truck is twofold. First, it argues that it had no duty to disclose any fact to the Carters because there was no contractual or confidential relationship between it and the Carters. Second, it argues that it fully complied with any duty to disclose in the first sale it made after its repurchase. By narrowing our consideration to the specific issue whether Chrysler owed any duty of disclosure to the Carters, we need not address this second argument. The focus of our analysis is whether the relationship between Chrysler *461 and the Carters could give rise to a legal duty to disclose.
In light of the new rule in Owen that the determination of a duty to disclose is a question of law, we note that cases considering whether a trial court erred in entering a summary judgment become important because they represent the Supreme Court's review of a trial court's determination that there was no substantial evidence from which a duty to disclose could arise. The case of Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala.1994), presents such a review and provides an analogy to the facts of this case. In Hines, the plaintiffs asserted a claim of fraudulent suppression against an automobile manufacturer because they had purchased an automobile that had been repaired by the manufacturer and the fact of those repairs had not been disclosed to them at the time of purchase. The manufacturer argued that it had not been involved with the sale of the vehicle to the plaintiffs and that it had had no relationship with the plaintiffs upon which a duty to disclose the fact of the repairs could be established.
Hines is significant to the instant case because it discusses the nature of the relationship between parties that can give rise to a legal duty to disclose. Further, although Hines references a case disapproved by Owen, i.e., Jim Short Ford Sales v. Washington, 384 So.2d 83 (Ala. 1980), Hines also relies on Berkel & Co. Contractors, supra, a case relied upon extensively by the Court in Owen. We conclude that the discussion in Hines concerning the determination of whether a legal duty to disclose exists remains precedential.
The Court in Hines discussed the requirement of a confidential or contractual relationship as a prerequisite to a duty to disclose, as follows:
"Our case law, however, makes it very clear that in an action alleging suppression of a material fact, a duty to disclose may be owed to a person with whom one has not had a contractual relationship or other dealings. Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738, 742-43 (Ala.1990); Lawyers Title Ins. Corp. v. Vella, 570 So.2d 578, 585 (Ala. 1990); Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786 (Ala.1986); Mid-State Homes, Inc. v. Startley, 366 So.2d 734 (Ala.Civ.App.1979); Chandler v. Hunter, 340 So.2d 818 (Ala.Civ.App. 1976); cf. Sims v. Tigrett, 229 Ala. 486, 158 So. 326 (1934) (holding that plaintiffs who had purchased bonds could recover for deceit, even though defendant did not sell plaintiffs the bonds, when the plaintiffs were included in the class of persons the defendant intended to induce by means of fraudulent misrepresentations).
"The extent of a legal duty not to make a false representation or to suppress a material fact informs our analysis of whether two parties have a sufficient relationship on which to base a duty to disclose. In Colonial Bank v. Ridley & Schweigert, 551 So.2d 390, 396 (Ala.1989), this Court stated:
"`There can be no actionable fraud without a breach of a legal duty owed by the defendant to the plaintiff. George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala.1986).
"`There is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation; to those to whom he has a public duty created by statute or pursuant to a statute; and to those members of a group or class that the defendant has special reason to expect to be influenced by the representation. W. Prosser, Misrepresentation and Third Persons, 19 Vand. L.Rev. 231, 254 (1966).'"
655 So.2d at 919-20 (emphasis added, footnote omitted).
The Court in Hines then applied these principles to the particular question of the *462 manufacturer's duty to disclose the repairs to the plaintiffs in the case before it:
"It is evident from these principles and our case law that the fact that two parties have had no contractual relationship or other dealings does not preclude the finding of a legal duty not to make a material misrepresentation or to suppress a material fact. The absence of a contractual relationship or other dealings, therefore, likewise does not preclude the finding of a relationship on which to base a duty to disclose. Johnny Spradlin Auto Parts, Inc., 568 So.2d at 742-43; see, e.g., Jim Short Ford Sales, Inc., 384 So.2d at 86-87. Whether a duty to disclose exists must be determined by examining the particular facts of each case. Jim Short Ford Sales, Inc., 384 So.2d at 86-87; Berkel & Co. Contractors, 454 So.2d at 505; Hopkins, 514 So.2d at 790.
"Because the Hineses were members of a group or class of persons who General Motors expected or had special reason to expect would be influenced by its decision not to disclose information about the repainting of damaged automobiles, General Motors and the Hineses had a sufficient relationship on which to base a duty to disclose."
655 So.2d at 920.
Thus, under Hines, we note that neither the absence of a direct contractual relationship between Chrysler and the Carters, nor Chrysler's distance from the transaction in which the Carters bought their truck, necessarily relieves Chrysler from a duty to disclose. Accordingly, we consider whether the Carters are members of a group that Chrysler either (a) would have a special reason to believe would be influenced by its suppression of the fact of the repurchase, or (b) might owe some special duty created by statute.
In considering the effect of a statutory duty, we note another case cited by the Court in Hines, Johnny Spradlin Auto Parts, Inc. v. Cochran, 568 So.2d 738 (Ala. 1990). In Johnny Spradlin Auto Parts, the Court considered a situation where the defendant had replaced a vehicle identification plate, in violation of § 32-8-86, Ala. Code 1975. The defendant argued that it did not owe a duty of disclosure to subsequent purchasers of the automobile because the statute was designed to aid law enforcement; the Court disagreed. Specifically, the Court held that subsequent purchasers of the automobile were entitled to the statutory protection of § 32-8-1 et seq., Ala.Code 1975, requiring accurate identification of their automobiles. The Court concluded that subsequent purchasers were therefore owed a duty of disclosure by entities that altered vehicle identification plates in violation of the statute.
We note that the record reveals that Chrysler did have a duty to disclose the fact of its repurchase under the Lemon Law by branding the title pursuant to § 8-20A-4, Ala.Code 1975.[2] That statute's requirement of branding the title is designed to afford notice of the circumstances of a vehicle's repurchase under the Lemon Law to all members of a very specific group of peoplethose who later negotiate to purchase the vehicle. The record also reveals that Chrysler adopted a policy that intentionally disregarded this statutory duty in order to maximize its own economic gain. The Carters are members of the group who should have been notified, through a branded certificate of title, of Chrysler's repurchase under the Lemon Law. The fact of Chrysler's disclosure of its repurchase *463 under the Lemon Law to certain subsequent purchasers does not, under the principles in Hines, supra, or Johnny Spradlin Auto Parts, supra, eliminate its duty of disclosure to other members of the group.
With reference to the other factors from Berkel & Co. Contractors listed in Owen, we note that consideration of the relative knowledge of the parties weighs heavily in favor of a legal duty. Chrysler's knowledge is complete as to its repurchase under the Lemon Law, and its failure to comply with that law and its adjustments to its record-keeping procedures to delete references to such purchases means that subsequent purchasers would have only limited access to such knowledge. We also conclude that the value of the particular fact, that the truck in question could not be repaired to comply with the manufacturer's warranty, is significant to subsequent purchasers of the truck, such as the Carters. We would presume that the appropriate custom of the trade would be compliance with the law.
Finally, we note that the existence of a legal duty under these circumstances only requires Chrysler to comply with the law; a legal duty does not entail any special revelation of company records or procedures. Compare Ex parte Ford Motor Credit Co., 717 So.2d 781 (Ala.1997). Accordingly, we conclude that there is substantial evidence which if accepted by the jury would give rise to a duty by Chrysler to disclose that it had repurchased the truck under the Lemon Law as a matter of law. The trial court's summary judgment for Chrysler as to the Carters' claim of fraudulent suppression is therefore due to be reversed.

II. Negligence and Wantonness
The Carters also argue that the trial court erred in entering the summary judgment for Chrysler as to their claims of negligence and wantonness. To recover on the basis of negligence, the Carters must show, by substantial evidence, that Chrysler owed them a duty of care, that Chrysler breached that duty, that the Carters suffered loss or injury, and that Chrysler's negligence was the actual and proximate cause of that loss or injury. Lollar v. Poe, 622 So.2d 902 (Ala.1993); John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375 (Ala.1990).
To establish their claim of wantonness, the Carters must present substantial evidence showing that Chrysler's breach of a duty to them was the result of a conscious action that proximately caused them damage. "Negligence is usually characterized as inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act." Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala.1987). See also Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala.1989).
As with the claim of fraudulent suppression, the parties' arguments focus on whether Chrysler owed the Carters a duty of due care under the facts of this case. We consider the question of the existence a duty in light of the circumstances of each case. See, e.g., Driver v. National Sec. Fire & Cas. Co., 658 So.2d 390 (Ala.1995); Butler v. AAA Warehousing & Moving Co., 686 So.2d 291 (Ala.Civ. App.1996). The Carters argue that the requirements of Alabama's Lemon Law create a duty on the part of Chrysler to disclose the fact of its repurchase of the truck. Certainly, a duty of care can arise from a statute:
"A legal duty to exercise care, therefore, arises where the parties are bound by contract, Pugh v. Butler Telephone Co., [512 So.2d 1317 (Ala.1987)], or where the obligations are `expressly or impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations, or by judicial decisions.' 57 Am.Jur.2d, Negligence § 36 at 382 (1988)." *464 King v. National Spa & Pool Inst., Inc., 570 So.2d 612, 614 (Ala.1990). See also Thompson v. Mindis Metals, Inc., 692 So.2d 805 (Ala.1997); Brock v. Watts Realty Co., 582 So.2d 438 (Ala.1991).
In this case, Chrysler was required, pursuant to § 8-20A-4, Ala.Code 1975, to brand the title of the truck if it was to be resold in Alabama. That is, Chrysler was required to use due care in posting on the vehicle title a notice of its repurchase under the Lemon Law so that all subsequent prospective purchasers of the vehicle would be informed. As we noted in the discussion of the claim of fraudulent suppression, supra, the statute is designed to afford subsequent prospective purchasers with knowledge of a material fact that directly affects the value of the vehicle that they are considering buying. Because the Carters are members of the class the statute was enacted to protect, the Lemon Law does support a finding of a legal duty of due care by Chrysler. Driver, Butler, and Brock, supra. See also Ryan v. First Alabama Bank, 620 So.2d 568 (Ala.1993). We conclude that the record contains substantial evidence from which a jury could find that Chrysler had a duty, as a matter of law, to brand the title so that the Carters would have had notice, at the time of their purchase, that the truck they were buying had been repurchased by Chrysler under Alabama's Lemon Law. Owen, supra.
Based on a careful examination of the record, we also conclude that there is substantial evidence from which a jury could determine that Chrysler either heedlessly or consciously breached its duty to the Carters. Thus, whether Chrysler's breach of its duty to the Carters was negligent, see Lollar, supra, or wanton, see Central Alabama Electric Cooperative, supra, is a question for the jury.
Finally, we also conclude that the Carters presented substantial evidence that they suffered damage by purchasing a truck with defects that cannot be repaired. With respect to the element of proximate cause, we note that questions of proximate cause are normally questions of fact to be considered by the jury. Sparks v. Alabama Power Co., 679 So.2d 678 (Ala.1996). Under the circumstances of this case, the question whether the Carters would have purchased the truck and suffered damage had they been informed of Chrysler's Lemon Law repurchase falls under that rule.
Accordingly, we conclude that a jury could find from the evidence in this case that Chrysler owed the Carters a duty under the Lemon Law to brand the title of the truck. Because there is also substantial evidence from which a jury could infer that the Carters purchased a defective truck as a result of Chrysler's breach of its duty, the summary judgment for Chrysler on the Carters' claims of negligence and wantonness is also due to be reversed. Accordingly, the summary judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.
CRAWLEY, Judge, concurring in part and dissenting in part.
I agree with Presiding Judge Robertson that the Carters presented substantial evidence to support their claims of fraudulent suppression and negligence; therefore, I concur in the reversal as to those claims. However, I conclude that the trial court properly entered summary judgment on the wantonness claim.
Our supreme court has defined "wantonness" as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala.1994)." Alfa *465 Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998). The Carters presented evidence indicating that Chrysler had decided not to follow the procedures of Alabama's "Lemon Law" and, instead, had agreed with the Alabama attorney general's office to institute a procedure to ensure that automobiles subject to that law would not be sold in Alabama. The Carters also presented evidence indicating that a clerical employee at Chrysler inadvertently omitted a notation stating that Chrysler was not to sell the automobile in Alabama, and evidence indicating that the Carters purchased the automobile in Alabama. I cannot conclude that this is substantial evidence of wanton conduct. Therefore, as to the wantonness claim, I dissent from the reversal of the summary judgment.
THOMPSON, J., concurs.
NOTES
[1] Although Chrysler Credit Corporation appears to be a distinct corporate entity that manages financing for Chrysler products, it makes no separate argument based on any corporate distinction.
[2] Chrysler argues that if Alabama's Lemon Law, §§ 8-20A-1 through 8-20A-6, Ala.Code 1975, is used by this court as a basis for liability, it unconstitutionally violates its due process rights. This argument does not address our conclusion that the Lemon Law is a fact to be considered by the jury in determining whether Chrysler owed a duty of disclosure to the Carters. Moreover, Chrysler does not favor this court with authority in support of its argument in this regard. We therefore do not consider this argument further. Sea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216 (Ala.1990); Pierce v. Helka, 634 So.2d 1031 (Ala.Civ.App.1994).