Mary Sparks, as administratrix of the estate of her husband Charles Sparks, deceased, has appealed from the trial court's denial of her motion for a new trial. That motion had followed a judgment entered on a directed verdict and a jury verdict in favor of the defendant Alabama Power Company ("APCo").
 I. Facts
Charles Sparks was killed on the evening of November 30, 1991, when he contacted a fallen APCo line that was still energized and was carrying 19,900 volts of electricity. The 40-foot wooden pole suspending the uninsulated electric line was snapped into three pieces and caused to fall when it was struck by an automobile driven by one of Mr. Sparks's friends, who had lost control of his automobile while engaged in a drag race on Shelby County Highway 260 with a second automobile driven by another friend. Mr. Sparks was a participant in the drag race to the limited extent of driving his truck down the road to mark the finish for the race. After the accident occurred, Mr. Sparks drove his truck to the scene and checked on the condition of his friend in the damaged automobile. Mr. Sparks was killed when his shoulder contacted the electric line as he was returning to his truck.
In March 1992, Mary Sparks filed a wrongful death action against APCo. The case went to trial in May 1995, and at the close of the evidence the trial court granted APCo's motion for a directed verdict against Mrs. Sparks's wantonness claim. On May 11, 1995, the jury returned a verdict in favor of APCo on Mrs. Sparks's remaining negligence claim. She moved for a new trial on June 8, 1995, and the court held a hearing on the motion on July 5. The trial court overruled the new trial motion on July 21 by an order that was entered on the case action summary sheet. No notice of the order was mailed to Mrs. Sparks's counsel or to APCo's counsel, and no entry was made on the computer case record system used by the Jefferson circuit clerk's office personnel.
Under our usual procedure, the last day for Mrs. Sparks to file a timely appeal was September 1, 1995, the 42d day from the July 21 final judgment. However, she did not file her notice of appeal until October 12, 1995. APCo has moved this Court to dismiss the appeal as untimely. Thus, we must first determine whether the appeal should be dismissed. *Page 680 
 A. Timeliness of the Appeal
In response to APCo's motion to dismiss her appeal, Mrs. Sparks claims that she relied in good faith on information obtained from the Jefferson circuit clerk's office indicating that her motion for new trial had not been ruled on within 90 days and, thus, had been denied on the 90th day by operation of Rule 59.1, Ala.R.Civ.P. Mrs. Sparks's counsel say that they periodically checked with the circuit clerk's office regarding a possible ruling by the court on the motion for new trial, but were repeatedly informed that the court had not ruled.
However, on September 7, APCo's counsel found the case action summary sheet for this case in the "disposed" case files in the Jefferson circuit clerk's office and learned from the notation on the case action summary sheet that Mrs. Sparks's motion for a new trial had been denied on July 21.
Mrs. Sparks's counsel say that because they did not receive notice of the trial court's July 21 ruling denying the motion for new trial, they believed the motion was denied by operation of law after 90 days — i.e., on September 6. Mrs. Sparks's notice of appeal was filed on October 12, within 42 days of September 6. However, October 12 is 83 days from July 21, the day the trial court entered its order denying the motion for new trial. Therein lies the issue whether the appeal was timely filed.
On October 19, Mrs. Sparks filed a motion asking the trial court to hold that the Jefferson circuit clerk's computerized docket sheet is a legal equivalent of the formal case action summary sheet and that she had a right to rely on what the clerk's office told her counsel — that as of the 90th day the court had not ruled on her new trial motion. Mrs. Sparks also asked the court to rule that the effective date of the final judgment was September 6 and not July 21, so that her October 12 notice of appeal would be timely.
Following a hearing, the trial court overruled Mrs. Sparks's motion. That court concluded:
 "Plaintiff's motion essentially seeks relief in the form of an extension of time for appeal, citing Rules 60 and 77, Alabama Rules of Civil Procedure. The court finds that this motion is governed by Rule 77(d), not Rule 60, under the authority of Lindstrom v. Jones, 603 So.2d 960
(Ala. 1992), and Corretti v. Pete Wilson Roofing Co., 507 So.2d 408 (Ala. 1986). The exclusive remedy of a litigant who claims lack of notice of the entry of an appealable order is a motion under Rule 77(d), which must be filed within 72 days following entry of the appealable order, after which the court loses jurisdiction to grant relief. Corretti v. Pete Wilson Roofing Co., supra, at 409.
 "While the legal profession is becoming more and more dependent on computers, the computerized storage of case information by the Circuit Clerk's office has not attained the status which our case law affords a written order on the case action summary sheet. The court understands that attorneys expect the Clerk's computer record to be accurate. However, any notice given by the Clerk's Office is 'intended for the convenience of the litigants' (Rule 77(d) committee comments) and is not presently a substitute for orders signed by the court on the case action summary sheet.
 "The court finds that the order overruling plaintiff's motion for new trial was entered on the case action summary sheet on July 21, 1995, and that the time for appeal began to run as of that date. Asam v. City of Tuscaloosa, 585 So.2d 60
(Ala.Civ.App. 1991)[, cert. denied, 502 U.S. 1033, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992)]; Crawford v. Ray Pearman Lincoln Mercury, 420 So.2d 269
(Ala.Civ.App. 1982). Here the plaintiff's motion for relief was filed 89 days after the entry of the July 21 order and, accordingly, this court has no jurisdiction to grant plaintiff an extension of time for filing her notice of appeal.
 "It is therefore, ORDERED, ADJUDGED and DECREED that plaintiff's motion be and the same is hereby overruled."
 1.
APCo moved this Court to dismiss the appeal, based on the reasoning stated in the trial court's order. APCo argues that, based *Page 681 
on Asam and Crawford, cited in the trial court's order, supra, the July 21 entry on the case action summary sheet denying the motion for new trial constituted the entry of an appealable order under Rule 58, Ala.R.Civ.P. Thus, it says, as a matter of law, the 42 days for appeal began running on July 21. APCo also says that its counsel obtained a copy of the case action summary sheet, showing the trial court's July 21 order, on September 7.[1] APCo notes that under Rule 77(d), Ala.R.Civ.P., Sparks had an additional 30 days, following the expiration of the 42 days, to seek an extension of time from the trial court for filing an appeal. APCo points out that September 7 was within the 30-day period within which Mrs. Sparks could have sought a Rule 77(d) extension, but that she did not seek an extension within the 30 days.
In response, Mrs. Sparks seeks from this Court the same relief she sought from the trial court — a ruling that her counsel could rely on telephone conversations with employees of the Jefferson circuit clerk's office to determine the status of her new trial motion, and that her appeal must be taken as timely. She asks this Court to hold that the new trial motion was denied by operation of law on the 90th day rather than by the July 21 notation on the case action summary sheet. She argues that the "present Jefferson County and statewide [Administrative Office of Courts] computer system is the equivalent of the 'case action summary sheet' or the [Rule 79, Ala.R.Civ.P.,] 'civil docket,' at least under these unique facts in this particular case." She asks this Court to hold that when a discrepancy occurs between a circuit clerk's computerized information regarding a case and the information actually recorded on the case action summary sheet (the civil docket), a party should be allowed to rely on either one. She argues that her counsel relied in good faith on information given to them by employees of the circuit clerk's office, taken from the office's computer system, and she contends that it would be an injustice to dismiss her appeal as untimely.
 2.
We believe it reasonable, under the facts of this case, to allow Mrs. Sparks to rely on the information affirmatively supplied her by the Jefferson circuit clerk's office — information indicating that as of the 90th day there had been no ruling on her motion for new trial. Rule 1, Ala.R.Civ.P., and Rule 1, Ala.R.App.P., state that the Rules of Civil Procedure and the Rules of Appellate Procedure must be construed to assure the just determination of every action. These rules evidence this Court's belief that every litigant must receive fair and just treatment from the court system of this State. Accordingly, we hold that where there is a material discrepancy between the information contained on the formal case action summary sheet in a case and the information contained in the circuit clerk's computerized docket, a litigant should not be penalized by relying in good faith on the information contained in either "document." Thus, we hold that the October 12 appeal, which was filed within 42 days from the date on which the new trial motion would have been denied by operation of Rule 59.1, must be taken as timely. Accordingly, we deny APCo's motion to dismiss the appeal.
 II. Issues on Appeal
On appeal, Mrs. Sparks makes two arguments in support of her contention that the trial court erred in denying her motion for new trial: (1) that she presented substantial evidence in support of her wantonness claim and that the trial court erred in directing a verdict in favor of APCo on that claim, and (2) that the trial court committed reversible error by instructing the jury regarding Alabama's "drag racing statute," Ala. Code 1975, § 32-5A-178, in relation to Charles Sparks's alleged contributory negligence.
 A. Directed Verdict on Wantonness
Mrs. Sparks claims that APCo acted wantonly by protecting the electric line involved in this case against faults with a 100-ampere fuse. She says the fuse was too *Page 682 
large and prevented the electric line from properly de-energizing when, she says, it contacted a ground source after the pole was broken. However, before discussing her argument that she presented substantial evidence in support of her claim, we address APCo's argument that her wantonness claim was precluded as a matter of law because the jury found in favor of APCo on her negligence claim. Citing Lassie v.Progressive Ins. Co., 655 So.2d 952 (Ala. 1995), for the proposition that a jury is presumed to have found the facts necessary to support its verdict, APCo argues that we must presume the jury found that the 100-ampere fuse was the proper size for that electric line and that there was no causal connection between APCo's conduct and Charles Sparks's death.
Although we must presume that from the evidence in this case the jury found those facts necessary to support its verdict,Lassie, supra; State Farm Auto. Ins. Co. v. Morris,612 So.2d 440 (Ala. 1993), we cannot presume that the jury found that APCo was not negligent. The jury may well have found APCo negligent and also found Charles Sparks contributorily negligent; contributory negligence was raised by APCo as a defense and that issue was hotly debated at trial. It is critical to note that contributory negligence is not a defense to a claim of wantonness. Knight v. Alabama Power Co., 580 So.2d 576
(Ala. 1991); Brown v. Turner, 497 So.2d 1119 (Ala. 1986). Moreover, negligence and wantonness are qualitatively different torts, and a jury may find a defendant wanton without finding the defendant negligent. Lynn Strickland Sales Service, Inc.v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala. 1987). Accordingly, this Court cannot draw from the jury's verdict the inference APCo asks us to. See Brown, supra. Therefore, we must address the merits of Mrs. Sparks's claim that the trial court erred in directing a verdict against her wantonness claim.
1. Standard of Review
 "The standard of appellate review applicable to a motion for directed verdict . . . is identical to the standard used by the trial court in granting or denying the [motion] initially. Thus, when reviewing the trial court's ruling . . ., we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant."
Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988) (citations omitted). In other words, viewing the evidence in a light most favorable to Mrs. Sparks, we must determine whether she presented substantial evidence in support of her wantonness claim.
 2. Resolution
This Court noted in Lynn Strickland Sales, supra, that "[i]mplicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." 510 So.2d at 145. We have also stated that in order for a party to be found guilty of wanton conduct, "it must be shown that with reckless indifference to the consequences the party consciously and intentionally did some wrongful act or omitted some known duty, and that this act or omission produced the injury." Brown, 497 So.2d at 1120.
Given our standard for reviewing a directed verdict, we must view the evidence in a light most favorable to Mrs. Sparks, the nonmovant. Viewing the record in that light, we find the following facts relevant to the issue whether APCo acted wantonly: The power line carried 19,900 volts of electricity under a 0.75 amperage load; it was protected from faults and short circuits by a 100-ampere fuse. The power line was not covered by insulation; it was insulated by "isolation," being suspended approximately 40 feet in the air by a series of wooden poles. The wooden pole hit by the automobile was located approximately 15 feet off the roadway. APCo is aware that sometimes automobiles strike power line poles and cause the lines to fall. When the pole holding up the power line involved in this case was broken, sparks were visible in the air and small fires were started in the roadside grass, indicating that power line contacted a ground source, but the 100-ampere fuse on the line did not *Page 683 
blow and de-energize the line. Charles Sparks's shoulder contacted the power line while he was walking to his truck at the accident scene. The power line remained energized until an APCo service employee turned off the power.
In addition, Mrs. Sparks's expert witness, Dr. Erwin Reinhard, a retired University of Alabama professor of electrical engineering, testified regarding a general rule that the amperage of the fuse on an electrical appliance or even on a power line should be one and one-half times the amperage of the line. He stated that APCo should have used, at most, a 3 or 5-ampere fuse on the power line at issue, and he testified regarding APCo's use of the 100-ampere fuse. Although this testimony by Dr. Reinhard was contradicted by the testimony of APCo's expert witness, in our review of the directed verdict we must view the following expert testimony by Dr. Reinhard as true:
 "Q. And when you look at the load on that line we found out that it was .75 amps?
"A. That is correct.
"Q. Less than one amp?
"A. That is correct.
 "Q. Is it prudent engineering, Dr. Reinhard, to use a 100-amp fuse when the maximum load on the line will be .75 amps?
"A. No, sir.
 "Q. From the standpoint of safety, Dr. Reinhard, do you have an opinion as to whether or not to use a 100-amp fuse to fuse a — as a protective device on a distribution line where the maximum amperage on that line will be .75 amps is reasonable?
"A. No, sir.
"Q. It is not reasonable?
 "A. No, sir. From a safety standpoint, you want the fuse as small as possible in line with efficient operation of the system.
". . . .
 "Q. And in this case again there is three-quarters of an amp, and what size fuse did the Alabama Power Company use to protect it?
"A. 100 amperes.
"Q. Is that reasonably safe?
"A. No, sir.
 "Q. Would this system have worked with the three-amp fuse?
"A. Certainly.
". . . .
 "Q. And to size a 100-amp fuse for a distribution line that draws three-quarters of an amp is unsafe, is it not?
"A. Yes, sir.
". . . .
 "Q. Doctor, I want you to assume that a 19,900-volt power line comes in contact with the neutral [line] and that sparks fly. Assuming that's a fact, and assuming that that line is fused with a five-amp fuse, do you have an opinion as to whether or not that fault or short circuit would deactivate a line with a five-amp fuse?
 "A. It would certainly melt the fuse and deactivate the line.
 "Q. And if the line is deactivated and someone comes in contact with it, what is going to happen?
 "A. Nothing other than maybe getting physically hurt, you know, with the wire, but if it's deactivated there is no energy there."
Mrs. Sparks summarizes her argument on this issue as follows:
 "APCo knows poles and lines will come down for a variety of reasons, including automobiles striking them. APCo knows anyone contacting a 19,900-volt conductor will probably die. Thus, APCo had a duty to use the lowest possible fuse so as to create the greatest possible degree of safety. A reasonable jury could find APCo's conduct wanton in this regard."
In response, APCo argues that Mrs. Sparks failed to present substantial evidence of at least one element of wantonness — that APCo knew that injury was likely to be suffered by Charles Sparks as the result of his contacting this power line. APCo argues that much of Mrs. Sparks's case is supported only by conjecture and that, under Alabama law, a jury question on wantonness cannot be created by conjecture. APCo says that Mrs. Sparks presented no evidence that APCo *Page 684 
knew that this pole would be struck by a car and that the power line would come down. It contends that the fact that the pole was not located on a curve and was placed at an appropriate distance from the road negates an assumption APCo had such knowledge. APCo also contends that Mrs. Sparks presented no evidence that it knew the use of a 100-ampere fuse on that power line would result in injury. It contends that the use of the 100-ampere fuse did not violate a recognized national standard or electrical code, and it argues that the lack of such a violation negates an assumption that it knew or had reason to know an injury would likely result from the use of such a fuse.
Even viewing the evidence in a light most favorable to Mrs. Sparks, we must conclude that she did not present substantial evidence in favor of her claim that APCo had acted wantonly. The key element of wantonness is a party's action or omission of an act with the conscious knowledge that injury to another is likely to proximately result from the act or omission.
Mrs. Sparks's arguments to this Court, and the evidence she presented at trial, emphasize the idea that APCo breached a duty to the public, the duty of using the lowest-amperage fuse it could reasonably use on the power line involved, specifically a 3- or 5-ampere fuse rather than the 100-ampere fuse APCo did use. We know that the trial court considered that evidence as substantial evidence of negligence, because the court submitted the negligence claim to the jury — but it is not substantial evidence of wantonness. Mrs. Sparks failed to present substantial evidence that APCo had knowledge that a 100-ampere fuse would not properly de-energize the electric line if the line contacted a ground source and that it consciously chose to use that size fuse knowing a person would likely suffer injury as a result. Viewing the evidence in a light most favorable to Mrs. Sparks, we accept that the electric line contacted a ground source; that the 100-ampere fuse did not blow to de-energize the line; that Charles Sparks was killed; and that the use of a 3- or 5-ampere fuse would have been safer than the use of a 100-ampere fuse. Yet, a reasonable person could not infer from those facts that APCo had a conscious knowledge in advance that the line would not de-energize with a 100-ampere fuse, and Mrs. Sparks failed to present substantial evidence that APCo did have such knowledge. Accordingly, the trial court properly directed a verdict for APCo on the wantonness claim and properly denied Mrs. Sparks's motion for a new trial on that claim.
 B. Jury Charge on the Drag Racing Statute
Mrs. Sparks contends she should receive a new trial on her negligence claim because, she says, the trial court committed reversible error when it charged the jury that it could consider Charles Sparks's alleged violation of Ala. Code 1975, § 32-5A-178, the drag racing statute, as evidence of contributory negligence. As noted previously, Charles Sparks participated in the drag race only by driving his truck to a spot down the road to mark the finish line. The trial court gave the jury APCo's requested jury charge, which is quoted in relevant part below:
 "The Court charges the jury that the Alabama Rules of the Road consist of a number of statutes enacted into law by your Legislature regulating the flow of traffic upon the highways of this State.
 "The violation of certain of these Rules of the Road by persons using the public highways is prima facie negligence only. This means that the violation of such a rule is presumed to be negligence, but such violation is not under all circumstances negligence, and it is a jury question whether such a violation in a particular case is negligence. Should you determine that the violation of such a statute is negligence, such negligence in order to constitute a defense on the part of the defendant must proximately cause or proximately contribute to the injuries complained of by the plaintiff.
 "I will now read certain of these statutes to you. The fact that I read these statutes is no indication that any of these statutes has been violated, or that such violation is negligence, or that any such violation proximately caused or proximately contributed to the fatal injury suffered by Charles A. *Page 685 
Sparks. It is for you to decide whether or not the statutes are applicable, whether or not they have been violated by Charles A. Sparks, and whether or not such violation is negligence, and whether or not any such violation caused or contributed to the fatal injury suffered by Charles A. Sparks, depending on what you find the facts to be:
"1. Section 32-5A-178, Code of Alabama
 " 'No person shall drive any vehicle on any highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, and no person shall in any manner participate in any such race, competition, contest, test or exhibition.' "
(Emphasis added.) Mrs. Sparks objected to this jury charge, preserving the issue for appeal.
Mrs. Sparks argues that the jury instruction was improper in that, she says, it allowed the jury to possibly find "statutory (contributory) negligence" without APCo's having shown that each of the four elements of statutory negligence set out inFox v. Bartholf, 374 So.2d 294 (Ala. 1979), were met.[2] Mrs. Sparks also argues that Charles Sparks did not violate §32-5A-178 because, she says, according to Greer v. State,563 So.2d 39 (Ala.Crim.App. 1990), he was not sufficiently involved in the drag race for the jury to find a violation on his part. Finally, Mrs. Sparks contends that the jury should not have been charged regarding contributory negligence relating to the drag race because, she says, according to her theory of negligence against APCo — that APCo misfused the electric power line — it was irrelevant how the power line came to fall down.
Citing Murray v. Alabama Power Co., 413 So.2d 1109
(Ala. 1982), APCo argues that the charge was proper in that it instructed the jury that a violation of one of the "Rules of the Road" would be prima facie negligence only and not negligence per se. Thus, APCo contends, the statutory negligence standard of Fox, supra, is not applicable. Third, APCo argues that Charles Sparks violated § 32-5A-178 because, APCo says, unlike the criminal defendants in Greer, he was not simply a passive spectator of the drag race. Finally, APCo argues that the issues of contributory negligence and proximate cause are proper for a jury to decide and that the trial court did not err in giving the jury charge at issue.
We conclude that the trial court did not err in giving APCo's requested jury charge relating to § 32-5A-178. The instruction did not involve the concept of pure statutory negligence, or negligence per se, by which if the jury finds that the party violated the statute then the party is considered to have been negligent as a matter of law. Accordingly, APCo was not required to prove the strict elements of statutory negligence set out in Fox, supra. Rather, the trial judge simply informed the jury that it was to determine whether Charles Sparks violated the statute, whether the violation was negligent behavior under the circumstances of the case, and, if so, whether the violation proximately caused his death. Clearly, the jury charge did not invade the province of the jury.
We find our opinion in Murray, supra, referenced by APCo, to be on point as to the jury charge at issue. In Murray, the trial court gave a similar instruction relating to Tuscaloosa City Ordinance No. 1437, which made unlawful the installation of a radio or television tower within a certain distance from an electric power line. In reviewing the jury instruction, this Court stated:
 "We hold that a safety statute or ordinance, such as Ordinance No. 1437, can be considered by a jury as going to the standard of care for the self-protection of the plaintiff. A violation of such statute or ordinance can, therefore be evidence of negligence under certain circumstances. *Page 686 
The decision of whether a violation occurred, whether such violation was negligence, and whether such negligence was the proximate cause of the injuries complained of will, as here, be left entirely to the jury."
413 So.2d at 1114.
Although Mrs. Sparks argues that Charles Sparks did not violate the drag racing statute because, she says, his involvement in the race was minimal compared to that of the drivers of the automobiles, and argues that his involvement in the race did not proximately cause his death, we note that the issues of an alleged breach of a legal duty (negligence) and proximate cause are normally questions of fact for the jury.Dale v. Kelly, 620 So.2d 632 (Ala. 1993); Sungas, Inc. v. Perry,450 So.2d 1085 (Ala. 1984); Murray, supra. In sum, we find no error in the trial court's jury instruction relating to §32-5A-178. We conclude that the trial court did not err in denying Mrs. Sparks's motion for a new trial on her negligence claim.
 III. Conclusion
The judgment of the trial court is affirmed.
AFFIRMED.
SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, J., concur in the result.
[1] The record does not indicate that APCo's counsel shared this information with Mrs. Sparks's counsel.
[2] The four elements of statutory negligence set out in Fox are: (1) that the statute was enacted to protect a class of persons that includes the litigant seeking to assert the statute; (2) that the injury was of the type contemplated by the statute; (3) that the party charged with negligent conduct violated the statute; and (4) that the statutory violation proximately caused the injury. 374 So.2d at 295-96.