On Application for Rehearing
PER CURIAM.
This Court’s opinion of September 8, 2006, is withdrawn, and the following is substituted therefor.
*1017 The State has petitioned for certiorari review of a decision of the Court of Civil Appeals reversing the circuit court’s dismissal of James Craig Boutwell’s appeal in a condemnation proceeding. We affirm the judgment of the Court of Civil Appeals, but we do so on a rationale different from the rationale given by that court.
For more than 100 years, the only provision of Alabama law addressing appeals from orders of condemnation entered by probate courts allowed 30 days from “the making of the order of condemnation” in which to file an appeal. § 18-1A-283, Ala. Code 1975; see State ex rel. Wood v. Williams, 125 Ala. 115, 28 So. 401 (1900). Neither the legislature nor this Court, however, has ever explicitly defined when an order of condemnation is “made” for purposes of § 18-1A-283 or its predecessor statutes. That is what we must do in this case.

I. Proceedings in the Probate Court and the Circuit Court

In December 2003, the State of Alabama filed in the Probate Court of Covington County a petition to condemn land owned by Boutwell to widen U.S. Highway 84 between Opp and Andalusia. Boutwell’s property comprised approximately 2.5 acres and had been in his family since the 1940s; the parcel sought to be condemned included his residence and the buildings in which he conducted his cane-pole business. The probate court granted the State’s petition to condemn and, pursuant to § 18-1A-279, Ala.Code 1975, a part of the Alabama Eminent Domain Code, § 18-1A-1 et seq., Ala.Code 1975, appointed commissioners to assess the compensation to which Boutwell was entitled for the taking of his property. § 18-1A-281, Ala.Code 1975. After the commissioners filed their report, the probate court issued an order condemning the property and transferring title of the property to the State, subject to its payment of a total compensation award of $153,791.65. The probate court signed the order of condemnation on January 26, 2004; the order was “recorded in the probate minutes” on January 27, 2004.[1]
As required by § 18-1A-282, Ala.Code 1975, the probate court then prepared and mailed a letter to Boutwell, dated January 27, 2004, notifying Boutwell of his right to appeal under § 18-1A-283. Ex parte City of Irondale, 686 So.2d 1127, 1129 (Ala.1996); Stanton v. Monroe County, 261 Ala. 61, 63, 72 So.2d 854, 855 (1954). The letter quoted the entire text of § 18-1A-283 and included a copy of the condemnation order. Section 18-1A-283 provides:
“Any of the parties may appeal from the order of condemnation to the circuit court of the county within SO days from the making of the order of condemnation by filing in the probate court rendering that judgment a written notice of appeal, a copy of which shall be served on the opposite party or his attorney, and on such appeal, the trial shall be de *1018 novo, and it shall be necessary to send up the proceedings only as to the parties appearing or against whom an appeal is taken.”
(Emphasis added.)
On February 25, 2004, Boutwell and his attorney contacted the probate judge regarding the deadline within which to file an appeal from the condemnation order. The probate judge informed them that an appeal filed the following day, February 26, would be timely. On February 26, 2004, Boutwell filed his notice of appeal in the probate court. This notice was filed 30 days after the order of condemnation had been recorded in the probate minutes, but 31 days after the probate judge had signed the order.
After the condemnation proceeding was transferred to the Covington Circuit Court for a trial de novo, the State moved to dismiss Boutwell’s action, arguing that it was untimely because it was filed 31 days after the probate judge had signed the condemnation order. The circuit court agreed. The court concluded that Bout-well had failed to comply with the requirements of § 18-1A-283, and it dismissed the action.
Thereafter, Boutwell moved the circuit court to reconsider and vacate its judgment. Boutwell asserted that the probate judge had informed him that his appeal would be timely if it was filed on February 26, 2004, and asked the circuit court to set aside its order dismissing the case and to “enter an order consistent with the intention of the Probate Court of Covington County, Alabama, allowing the appeal to stand as timely filed.” In support of his motion, Boutwell attached an affidavit from the probate judge in which she acknowledged that she had spoken with Boutwell and his attorney on February 25, 2004, and stated that “it was [her] intention and opinion that an appeal filed by February 26, 2004, the day following [the] conversations, would be a timely filed appeal pursuant to [§ ]18-lA-283.”
In response, the State argued that Bout-well’s appeal had been properly dismissed because “[t]he intention and opinion of the Probate Judge cannot extend, or shorten, the time period for an appeal created by the legislature.” It also produced a second affidavit from the probate judge in which she stated that she had “not undertaken to give legal advice to James Craig Boutwell or to his attorney....”
The circuit court denied Boutwell’s motion to reconsider, and Boutwell appealed to the Court of Civil Appeals.

II. Appeal to the Court of Civil Appeals

On appeal, the Court of Civil Appeals reversed the circuit court’s judgment and remanded the case with directions to reinstate Boutwell’s appeal. The court concluded that it was unclear from the critical language in § 18-1A-283, providing that an appeal must be filed within 30 days “from the making of the order of condemnation,” “whether our legislature intended the running of the period within which to appeal to start from the date an order was signed or from the date a signed order was recorded.” Boutwell v. State, 988 So.2d 1012, 1014 (Ala.Civ.App.2005). Faced with this apparent uncertainty in the statute and with no authority directly on point,[2] the Court of Civil Appeals looked to the *1019 Alabama Rules of Civil Procedure for guidance. While recognizing that the Rules “are not applicable to probate court proceedings,” citing Ex parte City of Irondale, 686 So.2d at 1129, 988 So.2d at 1014, the court reasoned nevertheless that “the explanation in Rule 58[, Ala. R. Civ. P.,] of the difference between ‘rendering’ and ‘entering’ a judgment is informative as to the process courts follow when they ‘make’ a decision.” 988 So.2d at 1014. The court stated:
“Generally speaking, a trial judge must render a judgment in one of several ways; then, following the rendition of the judgment, the clerk of the court enters the judgment. Rule 58(a) and (c), Ala. R. Civ. P. The period in which to appeal a trial court’s judgment runs from the date of the entry of the judgment, not from the date of the rendition of the judgment. See Rule 58, Ala. R. Civ. P. (Committee Comments on 1973 Adoption).
“The statute at issue [§ 18-1A-283, Ala.Code 1975] indicates that the legislature was familiar with the word ‘rendition,’ because it is used in the same sentence as ‘making.’ Consequently, if the legislature had intended to begin the period in which to appeal on the date a probate court renders a judgment, it could have so stated. Instead the word ‘making’ was used. We hold that ‘making’ a judgment, for purposes of § 18-1A-283, incorporates both the rendering and the entering of a judgment.”
988 So.2d at 1015. Therefore, the Court of Civil Appeals concluded that “[b]ecause the probate court’s judgment was not ‘made’ until the court’s judgment was recorded in the probate court’s minutes on January 27, 2004, Boutwell’s notice of appeal filed in the probate court on February 26, 2004 — 30 days later — was timely.” 988 So.2d at 1015.
In so holding, the Court of Civil Appeals rejected the State’s argument that by holding that Boutwell’s appeal was timely it was impermissibly importing into the condemnation statutes concepts that would effectively destroy the time standards contained throughout the legislative scheme for condemnation. The State had argued, and continues to argue to this Court, that concluding that an order of condemnation is not “made” until it is recorded in the official minutes of the probate court, in light of the fact that all the documents pertaining to the condemnation proceeding in this case were recorded on the same date, leads to the absurd conclusion that all the necessary components of the condemnation process, from the State’s petition to condemn to the commissioners’ report, were made on the same date. The only interpretation of § 18-1A-283 that preserves the integrity of the entire statutory scheme, the State argues, is that an order of condemnation is made when it is signed by the probate court, just as the other orders are made during the condemnation process.
The Court of Civil Appeals found the State’s argument unpersuasive, however, and supported its holding as having “the practical benefit of avoiding a clear degree of uncertainty and perhaps unfairness that could develop if the State’s argument were adopted.” 988 So.2d at 1015. That court stated:
*1020 “Although it seems unlikely that most of the events in a case would occur actually on the same day, the sounder view is that, regardless of when the parties involved submitted documents to the trial court, an official ‘entering’ of a judgment must by necessity occur to adequately notify the parties as to when to begin the running of the time to appeal. For example, the probate judge could have signed the judgment when she was at home and then not brought it in to her office to be recorded for a week. In such an event, it would clearly be unfair to start the litigants’ time to appeal from a day when, unknown to them, the probate judge signed the order, and not the day the order was officially ‘recorded’ in the probate record.”
988 So.2d at 1015.
We granted certiorari review to consider whether the Court of Civil Appeals correctly construed § 18-1A-283.

III. Timeliness Issue

In this case, the facts are undisputed, and we are presented with a pure question of law. Therefore, our review is de novo. George v. Sims, 888 So.2d 1224, 1226 (Ala.2004).
In interpreting § 18-1A-283, “[pjrinciples of statutory construction instruct this Court to interpret the plain language of [the] statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
As discussed, the Court of Civil Appeals found the plain language of § 18-1A-283 ambiguous and looked to the Alabama Rules of Civil Procedure to conclude that the legislature must have intended the time for appeal under § 18-1A-283 to begin once the probate court had both signed and recorded the order of condemnation. The court supported this construction of § 18-1A-283 in large measure on the ground that the alternative interpretation advocated by the State could lead to an unfair result.
In interpreting a statute, a court does not construe provisions in isolation, but considers them in the context of the entire statutory scheme; moreover, to ascertain legislative intent, a court should look to the entire act instead of isolated phrases or clauses. Pope v. Gordon, 922 So.2d 893, 897 (Ala.2005); Siegelman v. Alabama Ass’n of School Bds., 819 So.2d 568, 582 (Ala.2001); Ex parte Employees’ Retirement Sys. of Alabama, 644 So.2d 943, 945 (Ala.1994); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1225 (Ala.1984). Here, although § 18-1A-283 may be ambiguous if construed in isolation, it is not ambiguous when it is construed in the context of the entire legislative scheme governing condemnation proceedings. We conclude that based on the language contained in § 18-1A-282, which, along with § 18-1A-283 and other sections, was originally enacted as part of the Alabama Eminent Domain Code, the Court of Civil Appeals’ construction of § 18-1A-283 is incorrect.
Section 18-1A-282, Ala.Code 1975, provides:
“The commissioners must, within 20 days from their appointment, make a report in writing to the probate court stating the amount of damages and compensation ascertained and assessed by them for the owners of each tract of land, or persons injured and other parties interested therein, and thereupon, within seven days, the probate court must issue an order that the report be recorded and the property be condemned upon payment or deposit into *1021 the probate court of the damages and compensation so assessed. A notice of entry of said order and the amount of the award shall immediately be mailed by first class mail to each party whose address is known, together with a notice of the right to appeal therefrom to the circuit court within 30 days from the date of said order.”
(Emphasis added.) When the plain language of § 18-1A-283 is construed with that of § 18-1A-282, it is clear that the legislature has provided that the time for appeal from an order of condemnation is measured “from the date of” the order of condemnation, and not from the date of the recording of the order in the probate court. To hold otherwise would violate the principle that we must construe sections of the Code originally constituting a single act in pari materia to produce a harmonious whole. Proctor v. Riley, 903 So.2d 786, 789-90 (Ala.2004). In this case, the order of condemnation reads: “DONE this the 26 day of January, 2004.” Therefore, the order of condemnation was “made” on January 26, 2004, and Boutwell had 30 days from that date to file his notice of appeal.[3]
In reaching this conclusion, we are mindful of the potential unfairness that could result if a probate court drafted and signed an order of condemnation, yet failed to notify the parties of the order, thereby compromising their time for taking an appeal.[4] “Our task, however, is to resist ‘finding’ meanings in statutes when those meanings would contravene the very wording of the statutes themselves.” American Liberty Ins. Co. v. AmSoutk Bank, 825 So.2d 786, 794 (Ala.2002). We have construed the statute governing appeals in condemnation proceedings as the legislature has written it. It is for the legislature, not this Court, to amend the statute to associate the time for appealing an order of condemnation with an official recording or filing of that order in the probate court or with some other act.
Because Boutwell’s notice of appeal was filed 31 days after the order of condemnation was made, his appeal was untimely under § 18-1A-283.

IV. Equitable Estoppel

Boutwell asserts that even if we reject the Court of Civil Appeals’ statutory analysis and conclude that his appeal is untimely, we should nevertheless affirm the Court of Civil Appeals’ judgment directing the circuit court to reinstate his appeal because, he says, he relied to his detriment on the probate court’s erroneous notification of what was the last day on which he could file a timely notice of appeal. As a result, Boutwell argues, he is entitled to an equitable exception to the 30-day time period for appealing condemnation orders, an exception, he contends, this Court held in Ex parte Tanner, 553 So.2d 598 (Ala.1989), applied when a party *1022 has received an erroneous notification from a probate court.
The State argues that Tanner is distinguishable from this case because, it argues, the probate judge’s representation in this case was an incorrect statement regarding the application of the law as to the timeliness of the appeal rather than a misstatement of fact. Thus, the State argues, under the holding in State Highway Department v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202 (Ala.1992)—that the application of the doctrine of equitable estoppel in a case such as this must be based upon a misstatement of fact — equitable estoppel is unavailable in this case.
We note that at the time the probate judge informed Boutwell that his appeal would be timely if filed on the 31st day, this Court had not construed § 18-1A-283. Thus, the probate judge was not expressing a statement of law concerning the timeliness of Boutwell’s appeal because there was no law on this point; rather, the probate judge was expressing an opinion that this Court would construe § 18-1A-283 so that an appeal filed by Boutwell on February 26, 2004, would be timely.[5]
The following discussion of the Alabama Eminent Domain Code illustrates the confusing sections, loose language, and conflicting words that surround the issue decided today — when is a probate order of condemnation “made”? The current Alabama Eminent Domain Code, initially enacted as Act No. 85-548, Ala. Acts 1985, combined prior Alabama statutes as well as provisions of the Uniform Eminent Domain Code (“the UEDC”); it is primarily a procedural statute. The result of this combination is the use of different words of art in different sections that may conflict and/or convey different meanings.
Some confusion in the Alabama Eminent Domain Code arises because of the differing rules and practices imposed upon the different judicial forums in which a condemnation proceeding may proceed. Section 18-1A-71 provides probate courts with original jurisdiction of complaints for condemnation and § 18-1A-70 provides that the “procedure in the probate courts shall be as provided in this chapter.” However, any party may appeal the probate court’s order to the circuit court for a trial de novo, and, in such a case, § 18-1A-70 provides that the procedure in the circuit court is governed by the Alabama Rules of Civil Procedure, except as otherwise provided in the chapter. Although such procedural distinctions between the probate and circuit courts is a legislative prerogative, it serves only to heighten procedural confusion between the steps of the judicial process of condemnation.[6]
*1023 Confusion also arises from the differing language used in various sections in the Code. For instance, § 18-1A-276 requires that the probate court “make an order granting or refusing the complaint.” Section 18-1A-279 requires that commissioners appointed to determine the compensation for the condemned property “file a certificate” along with their compensation award, and § 18-1A-280 requires that the probate court “issue notice” of the commissioners’ appointment. Section 18-1A-282 requires that the commissioners “make a report” in writing to the probate court and that the probate court must then “issue an order” that the report be “recorded, ” (not filed or entered); the probate court must then give notice of the “entry of said order” to each party and of the right to appeal within 30 days from the “date of said order.” Section 18-1A-283 then grants any party the right to appeal to the circuit court within 30 days from the “making of the order of condemnation by filing in the probate court rendering that judgment a written notice of appeal.” The legislature, in these five Code sections, used the term “issue” twice, “make” or “making” three times, “file” once, “recorded” once, “date” once, and “rendering” once.
The appellate process beyond the probate level is only moderately less confusing. Pursuant to § 18-1A-287, the circuit court “shall make an order of condemnation,” although such an order is made (not rendered) only “[ujpon the payment of the damages so assessed to the owner or other party interested therein and the payment of costs of suit into circuit court.” Put another way, the circuit court’s order is properly made, not solely when the judgment is rendered but when the damages and costs are thereafter paid. Compare this to the opposite procedure in the probate court, where § 18-1A-282 states that the probate court “must issue an order that the [commissioners’] report be recorded and the property be condemned upon payment or deposit into the probate court of the damages and compensation so assessed.” This section seems to make the probate order interlocutory in nature— “the property be condemned upon payment or deposit” — yet that order is the final appealable order referred to in § 18-1A-283, which is either made, issued, rendered, and/or dated before the payment of damages and compensation. This is made further incongruous by the provisions of § 18-1A-290, which allow the condemnor up to 90 days after the assessment of damages and compensation to pay the award (even though the condemnee has only 30 days to appeal). However, at least upon appeal from the circuit court, § 18-1A-288 (identical to former § 18-1-25, Ala.Code 1975) uses the term “entry” as the appropriate beginning date for an appeal period in connection with the final judgment made in the circuit court, which is compatible with Rule 58(c), Ala. R. Civ. P., and Rule 4(a), Ala. RApp. P., allowing for appeals within 42 days of the entry of the circuit court’s judgment.
The probate judge of Covington County is learned in the law and was apparently aware of the distinctions in Rule 58(a) and (c), Ala. R. Civ. P., between the rendering and entering of a judgment. The confusion arising from the unwieldiness of the statutory scheme for condemnations made it easy to view the January 27, 2004, “recording” of the January 26, 2004, condemnation order as tantamount to “entering” it. Indeed, for all that appears *1024 otherwise in the record, including the fact that this order was recorded one day after it was signed, it may be the practice of the Covington County Probate Court to stamp orders as being recorded for the dual purpose of showing both entering and recording. Under these circumstances, we conclude that the doctrine of equitable estoppel should be available to allow Boutwell to proceed with the appeal.
This conclusion is further supported by the rationale and holding in Ex parte Tanner, supra. After Alabama Power Company filed its application for an order of condemnation seeking to condemn a portion of the Tanners’ property, the probate court appointed commissioners to assess the damages based upon the condemnation. On May 8, 1984, the commissioners issued their report, assessing the compensation for the Tanners’ property, and, on the same day, the probate court issued an order confirming the commissioners’ report and condemning the property upon payment of the damages award into the probate court. The May 8, 1984, order was consistent with § 18-1A-282, which provides that “[a] notice of entry of said order and the amount of the award shall immediately be mailed by first class mail to each party ... together with a notice of the right to appeal therefrom to the circuit court within 30 days from the date of said order.” There was no allegation that the May 8, 1984, order was not sent to and received by the Tanners’ counsel. After the damages were paid into the probate court, the probate court, on May 22, 1984, entered a second order confirming the payment and ordering the condemnation. Although the May 22, 1984, order could logically be considered the final appealable order, the legislature has mandated that the appealable order, pursuant to § 18-1A-282, was the May 8, 1984, order.[7]
*1025 The Tanners received a postcard from the probate court that incorrectly stated that they had 30 days from May 22, 1984, to appeal the probate court’s decision to the circuit court. They relied on that notification and filed their notice of appeal in the circuit court on June 19, 1984. The circuit court dismissed the appeal as untimely, and the Court of Civil Appeals affirmed. Tanner v. Alabama Power Co., 553 So.2d 596 (Ala.Civ.App.1988). This Court reversed the Court of Civil Appeals’ decision, holding that the erroneous notification caused an inequitable result and that, although the probate court was not required to send the postcard, once it did, the Tanners were entitled to rely on the date assigned to the condemnation order.
The Tanners and their counsel had just as much knowledge of the order “issued” pursuant to ■§ 18-1A-282 as Boutwell and his counsel did here. As in the case now before us, the Tanners and their counsel faced the same lack of a precise statement of the beginning date for the appeal period to begin. Yet it was the “postcard” ostensibly sent by the probate clerk’s office that was the basis for this Court’s unanimous decision in Ex parte Tanner that “to deny the Tanners the right to appeal because of the probate court’s erroneous notification would cause an inequitable result.” 553 So.2d at 598. Although we have concluded in this case that the probate judge’s attempt to apply Rule 58, Ala. R. Civ. P., logic to this gray area of a confusing Code section was incorrect, her statement to *1026 Boutwell in the context of these facts is a sufficient basis for invoking the doctrine of equitable estoppel; her statement to Bout-well certainly provided a quality of notice as significant as, or1 more so than, the postcard notification in Ex parte Tanner.
We find further precedential support for applying the doctrine of equitable estoppel in this case in Sparks v. Alabama Power Co., 679 So.2d 678 (Ala.1996). In Sparks, the plaintiff, Mary Sparks, the administra-trix of the estate of Charles Sparks, who was electrocuted when he contacted a downed power line operated by Alabama Power Company (“APCo”), sued APCo. In her wrongful-death action, Sparks alleged that APCo had negligently and wantonly permitted the downed power line to remain energized. The case was tried before a jury; the trial court granted APCo’s motion for a directed verdict on Sparks’s wantonness claim, and the jury returned a verdict for APCo on the negligence claim on May 11, 1995. Sparks filed a motion for a new trial on June 8, 1995, and the court held a hearing on that motion on July 5. On July 21, by an order entered on the case-action-summary sheet,' the trial court overruled the new-trial motion. However, no notice of the order was mailed to Sparks’s counsel or to APCo’s counsel, and no entry was made on the computer case-reCord system used by the trial court clerk’s office. Under the appellate rules then in effect, the last day for Sparks to have filed a timely appeal was September 1, 1995, the 42d day from the final judgment entered on July 21. Sparks subsequently discovered that she had not been notified of the date on which her motion for a new trial had been denied, and she sought an extension of the time to appeal on that basis. After the trial court denied her motion for an extension of the time to appeal, Sparks filed her notice of appeal on October 12, 1995, relying on the fact that information she obtained from the trial court clerk’s office showed that her motion for a new trial had not been ruled on within 90 days and, thus, had been denied by operation of law on the 90th day after her motion had been filed, making her appeal on October 12 timely. Rule 59.1, Ala.R.Civ.P..
The Court in Sparks first addressed APCo’s motion to dismiss the appeal as untimely, based on the long-settled principle of law that the timely filing of a notice of appeal is a jurisdictional act. Rudd v. Rudd, 467 So.2d 964, 965 (Ala.Civ.App.1985). Under this settled rule of law, an untimely filed appeal does not vest the appellate court with jurisdiction and requires dismissal of the appeal. In light of Sparks’s assertion that she and her counsel relied in good faith on the information supplied them by the trial court clerk’s office, this Court addressed APCo’s motion to dismiss her appeal as follows:
“We believe it reasonable, under the facts of this case, to allow Mrs. Sparks to rely on the information affirmatively supplied her by the Jefferson circuit clerk’s office — information indicating that as of the 90th day there had been no ruling on her motion for new trial. Rule 1, Ala.R.Civ.P., and Rule 1, Ala. R.App.P., state that the Rules of Civil Procedure and the Rules of Appellate Procedure must be construed to assure the just determination of every action. These rules evidence this Court’s belief that every litigant must receive fair and just treatment from the court system of this State. Accordingly, we hold that where there is a material discrepancy between the information contained on the formal case action summary sheet in a case and the information contained in the circuit clerk’s computerized docket, a litigant should not be penalized [for] relying in good faith on the information contained in either ‘document.’ Thus, *1027 we hold that the October 12 appeal, which was filed within 42 days from the date on which the new trial motion would have been denied by operation of Rule 59.1, must be taken as timely. Accordingly, we deny APCo’s motion to dismiss the appeal.”
679 So.2d at 681 (emphasis added).

V. Conclusion

Although we recognize the distinction between the facts in Sparks and the facts in this case with respect to records kept in a trial court clerk’s office and oral representations from a probate judge, we believe that the underlying principle that “every litigant must receive fair and just treatment from the court system of this State,” 679 So.2d at 681, is as applicable to the instant situation as it was to the situation in Sparks. Thus, although we do not agree with the Court of Civil Appeals that Boutwell’s appeal was timely, we nonetheless affirm the decision of the Court of Civil Appeals based on the equitable principles found in Ex parte Tanner and Sparks and the authority relied on in those cases.
APPLICATION GRANTED; OPINION OF SEPTEMBER 8, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
COBB, C.J., and STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, LYONS, and WOODALL, JJ., concur in part and dissent in part.
MURDOCK, J., recuses himself.

. In its opinion in this case, the Court of Civil Appeals compared "recording” of a probate court’s order to the “entry” of a circuit court’s judgment or order. See Rule 58(c), Ala. R. Civ. P.; Boutwell v. State, 988 So.2d 1012, 1015 (Ala.Civ.App.2005).
The general rule is that the time for taking an appeal runs from the entry of the judgment appealed from. Rule 4(a)(1), Ala. R.App. P. If this appeal were subject to that rule, it would be necessary to determine whether the act of recording the order in the probate minutes is equivalent to the entry of the judgment. Section 18-1A-283, however, is an exception to the general rule and instructs that the time for taking an appeal is calculated from the "making of the order.”
Section 12-13-41(2), Ala.Code 1975, requires the probate judge to “keep minutes of all his official acts and proceedings and, within three months thereafter, to record the same in well-bound books.” (Emphasis added.)

. Although this Court has never explicitly determined when an order of condemnation is "made” for purposes of § 18-1A-283, we have acknowledged the potential for uncertainty on the answer to that question under that statute. In Puckett v. Alabama Power Co., 412 So.2d 1209, 1210 n. 1 (Ala.1982), this Court stated:
"Our reference to the final judgment (order of condemnation) as the December 12 'Or *1019 der’ is not to be construed as holding that December 12, rather than December 21 (the date on which the order was marked 'FILED'), is the commencing date for measuring the time for taking the appeal. Because the notice of appeal was filed more than 30 days after December 21, we need not decide this issue.”
(Capitalization in original.)

. Because the act of recording the order may occur as much as three months after the fact, see note 1, supra, recording has no relevance in determining the time for appeal in this case.

. This, however, did not happen in this case. In its order dismissing the action, the circuit court "specifically noted that the Probate Judge in this proceeding did not hold her order for such an extensive time as to really affect [Boutwell's] ability to take a timely appeal. Rather, [Boutwell] simply failed to avail himself of the mandatory statutory method of perfecting the appeal.” The facts are undisputed that after the probate court signed the order of condemnation, the probate court mailed Boutwell a copy of the order, which expressly states that it is "DONE this the 26 day oí January, 2004,” and included a letter, dated January 27, 2004, notifying him of his right to appeal under § 18-1A-283. We note that under different facts a question of satisfactory notice under § 18-1A-282 could arise.

. Justice Bolin dissented from the holding in the September 8, 2006, opinion that the doctrine of equitable estoppel was not available to Boutwell. Justice Bolin’s special writing to that opinion set out in detail the vagaries of the Alabama Eminent Domain Code and thoroughly discussed the application of Ex parte Tanner to this situation, and much of the remainder of Part IV of this opinion is taken from his special writing.

. Illustrative of another example of procedural distinctions that can lead to confusion is Rule 1, Ala. R. Civ. P., which makes the Alabama Rules of Civil Procedure inapplicable to probate courts in general except those exercising statutory equitable jurisdiction. Rule 81(a), Ala. R. Civ. P., however, makes the Alabama Rules of Civil Procedure applicable when the probate court is handling the following proceedings:
“(5) Contest of probate of will.
"(6) Contested elections.
“(7) Corrections of errors in the Probate Court.
[[Image here]]
"(13) Habeas corpus.
[[Image here]]
"(22) Protection of estates of intemperates or inebriates.
[[Image here]]
"(25) Relieving disabilities of non-age.
(Footnote cont’d.)
*1023 "(26) Removal of property of a minor or a trust estate to this state or to another state.
[[Image here]]
"(29) Vacating and annulling maps, plats, streets, alleys and roads.”

. Nowhere in the Alabama Eminent Domain Code is there a provision authorizing an order like the May 22, 1984, order in Ex parte Tanner, which finalized the transfer of title by reflecting and acknowledging payment of damages and costs. However, as the Commentary to § 18-1A-282 states: "This section provides for the issuance of an 'order of condemnation’ similar to UEDC Section 1209, which was omitted from this Code in article 12.”
The UEDC provided for two types of judgments or orders, as set out in the following two sections:
"1201. [Contents of Judgment].
"(a) The judgment may, and in the case of a partial taking shall, describe the proposed project in relation to the property taken, and shall:
"(1) describe the property condemned and declare the right of the plaintiff to take it by eminent domain;
“(2) recite the verdict or decision and declare that title to the property will be transferred to the plaintiff after the plaintiff has paid to the defendant, or to the court for the benefit of defendant, the amount of compensation awarded and any additional amounts allowed;
"(3) describe the interest of each defendant in the property condemned, and state the amount of the award to which each defendant is entitled; and
"(4) determine all other questions arising from the taking, including questions relating to taxes, encumbrances, liens, rentals, insurance, or other charges.
"(b) If the court determines that any issue under paragraph (3) or (4) of subsection (a) cannot be tried expeditiously and that no party will be prejudiced by reserving it for later determination, the court may enter a preliminary judgment that includes the recitals required by paragraphs (1) and (2) of subsection (a), directs the plaintiff to deposit in court the amount of compensation awarded, and describes any issue reserved. A preliminary judgment so entered is appealable as to all matters and issues actually determined therein and not reserved. A supplementary judgment of apportionment determining any reserved issue shall be entered after that issue has been resolved.”
Unif. Eminent Domain Code § 1201, 13 U.L.A. 121 (2002) (emphasis added).
(Footnote cont'd.)
*1025 "1209. [Order Transferring Title].
“(a) Upon proof that the plaintiff has fully satisfied the judgment, the court shall make an order transferring to and vesting in the plaintiff the title to property taken.
"(b) The transfer order shall:
"(1) describe the property taken, recite or incorporate by reference the provisions of the judgment, and set forth the court’s determination that it has been satisfied; and
“(2) declare that title to the defendant’s property as described therein is transferred to and vested in the plaintiff upon the effective date of the order.
"(c) The party obtaining the transfer order shall promptly serve a copy of the order upon each party [and may file a copy for record in the place and manner provided by law for the recordation or registration of deeds and conveyances].”
Unif. Eminent Domain Code § 1209, 13 U.L.A. 131 (2002) (emphasis added).
It is the May 22, 1984, order in Ex parte Tanner that would be analogous to a UEDC, § 1209, order, although this section was not included in the Alabama Eminent Domain Code. The May 8, 1984, order is likened to the judgment provided for in UEDC, § 1201, and is the proper appealable order under both § 18-1A-282 and the UEDC.
By omitting UEDC, § 1209, when it enacted the Alabama Eminent Domain Code, the Alabama Legislature left a void in Alabama law concerning the transferring and vesting of title. The probate court in Ex parte Tanner issued its May 22, 1984, order to provide this missing link, although, as stated, there is no statutory authorization for such an order.
As stated earlier in this opinion, orders filed pursuant to § 18-1A-282 are interlocutory in nature because that section orders that the "property is condemned,” but only upon "payment or deposit into the probate court of the damages and compensation so assessed.” Therefore, even though the property is conditionally condemned in the order, title is not divested and transferred to the condemnor until an act occurs subsequent to the issuance of the order, i.e., the payment of damages and compensation. There are occasions when a condemnor, after the § 18-1A-282 order is issued, declines, for whatever reason, to continue to prosecute the action.
The omission of a section comparable to UEDC, § 1209, in the Alabama Eminent Domain Code, coupled with the fact that § 18— 1A-70 makes the Alabama Rules of Civil Procedure inapplicable if a procedure is otherwise provided in the Eminent Domain Code, leaves probate courts in a quandary to invent an order that conveys title, or an interest in title, to the plaintiff. In Ex parte Tanner, the quandary was solved by the May 22, 1984, order that was the basis for the incorrect postcard notice relied upon by this Court to invoke the doctrine of equitable estoppel.